Argued November 3, 1937; affirmed January 4, 1938

# IRWIN *v.* ASHURST ET AL.

(74 P. (2d) 1127)

In Banc.

*Arthur I. Moulton*, of Portland (John Irwin, of Klamath Falls, on the brief), for appellant.

*A. W. Schaupp* and *Henry Perkins*, both of Klamath Falls, for respondent Edward B. Ashurst.

*William Ganong*, of Klamath Falls, for respondents George Kincaid, David R. Vandenberg and KFJI Broadcasters.

BELT, J. This is an action to recover damages against the defendants who are alleged to have conspired to defame the character of the plaintiff. At the conclusion of the plaintiff's case in chief, the motion of the defendant Ashurst for nonsuit was allowed, but the cause was submitted to the jury as to the other defendants, resulting in a verdict in their favor. From the judgments of dismissal, the plaintiff appeals.

The facts out of which this action arose are as follows: The plaintiff was a witness for the State in a

criminal action being tried in the circuit court for Klamath county, wherein one Marion Meyerle was charged with murder in the first degree. The defendant, Edward B. Ashurst, who is the circuit judge of the Thirteenth Judicial District, presided at the trial. The defendant, David R. Vandenberg, was counsel for the defendant on trial in the murder case. The defendant KFJI Broadcasters, a corporation, is engaged in the business of operating a commercial radio broadcasting station at Klamath Falls, Oregon. The defendant, George Kincaid, is the general business manager of the radio broadcasting company.

The trial judge, with the consent of counsel, permitted the installation of a microphone in the courtroom for the purpose of broadcasting the proceedings in the murder trial. While the plaintiff, a woman 55 years of age, was testifying as a witness for the State in the murder case, it is alleged she was asked, among other things, on cross-examination, whether she used narcotics. The record, as made by the official court reporter, discloses the following questions and answers:

"Q. As much as I hate to I am going to have to ask you a personal question, Mrs. Irwin. Do you use narcotics? A. No. sir, not now.

"Q. You don't use any at all? A. I was ill for ten years and the doctor gave me morphine at the time I had operations.

"Q. You don't use them at all any more? A. No."

During the argument of the defendant Vandenberg to the jury it is alleged that he made the following statement of and concerning the plaintiff which was broadcast to the general public:

"Did you watch her? Did you see how she acted? The mind of a dope fiend, she was full of it, she was full of it when she testified; she showed she was an

addict; why, she's a lunatic, she's a crazy lunatic; she's a dope fiend; how nervous she was all through her testimony; she's a hop head; her whole testimony is imagination and delusion from taking dope; all through her testimony showed it; that she testified she had taken dope for ten years, and you may well know that she is still taking it; that you know when a person has taken dope for ten years, that they never stop it; she's a dope fiend; that she is lower than a rattlesnake; that a rattlesnake gives you warning before it strikes, but this woman gives no warning; that she is under a delusion from taking narcotics as long as she has; that she has a delusion; that all the testimony made regarding Marion Meyerle is only in her mind; that on account of her being an addict, that I wouldn't believe a word she said; that for this reason her testimony is out of the case. That her husband, Lawyer John (the husband of the plaintiff, John Irwin) knew what was necessary to convict one of murder in the first degree, and that Lawyer John run the bullets, and that she fired them; that Lawyer John fixed up the testimony and drilled her, and Mrs. Irwin swore to it.''

It is the theory of the plaintiff that the above argument was false and malicious and that, by reason of the unlawful broadcasting of the same, all the defendants who participated in such wrongful act are joint tortfeasors. It is also contended by plaintiff that the matter broadcast of and concerning the plaintiff was libelous per se.

Whether broadcasting defamatory matter over the radio is libel or slander constitutes an interesting question. Manifestly, the earlier cases of libel and slander arose before the process of radio broadcasting was known. Old precedents, setting forth distinctions made by the courts between libel and slander, seem inapplicable to the radio which may be used as a most powerful agency for the defamation of character. In *Sorensen v. Wood,* 123 Neb. 348 (243 N. W. 82, 82 A. L. R. 1098),

and *Miles v. Louis Wasmer, Inc.*, 172 Wash. 466 (20 P. (2d) 847, the broadcasters read from manuscripts and the courts had no hesitancy in holding the defamatory matter libel. Would they have so held had no manuscript been used by the broadcaster? Assume that a person writes a speech of a defamatory nature and, after committing the same to memory, speaks over the air without referring to his manuscript. Would such broadcast be held slander and not libel? The person who hears the defamatory matter over the air ordinarily does not know whether or not the speaker is reading from a manuscript. Furthermore, what difference does it make to such person, so far as the effect is concerned? For a discussion of the subject, see: 2 Journal of Radio Law 673; 46 Harvard Law Review 133; 66 U. S. Law Review 637; 16 Boston Univ. Law Review 1; 19 Minn. Law Review 611, 639; 12 Notre Dame Lawyer 15.

In the instant case it is not necessary to a decision to determine whether the alleged defamatory matter constitutes libel or slander. Hence, the question will be reserved. In keeping with the contention of plaintiff, it will be assumed but not decided that libel is involved.

■■ The defendant Ashurst was judge of a court having competent jurisdiction over the subject matter at the time the judicial proceedings were broadcast. There is no evidence tending to show that he participated in any conspiracy to defame the character of the plaintiff. It is well settled in England and in this country, on the ground of public policy, that a judge has absolute immunity from liability in an action for defamatory words published in the course of judicial proceedings: Newell on Libel and Slander (4th Ed.) § 360; *Watts v. Gerking,* 111 Or. 641 (222 P. 318, 228 P. 135, 34 A. L. R. 1489); *Shaw v. Moon,* 117 Or. 558 (245 P. 318, 45 A. L. R. 600); *Siverson v. Olson,* 149 Or. 323 (40 P. (2d) 65). The

mere fact, in itself, that the defendant Ashurst permitted the installation of a microphone to report judicial proceedings affords no basis for liability.

Counsel for plaintiff recognizes the force and effect of the rule above stated, but asserts it has no application here for the reason that the installation of the microphone in the courtroom for the purpose of broadcasting the alleged defamatory matter was an "extrajudicial and illegal act". In other words, plaintiff contends that the absolute privilege of the court "does not extend beyond the four walls of the courtroom".

■ Undoubtedly there is a diversity of opinion as to the propriety of installing a microphone in the courtroom for the purpose of broadcasting judicial proceedings, especially in cases involving sordid details of crime. This court is not prepared to say that it is unlawful per se to install a microphone in a courtroom to report judicial proceedings. The American Bar Association frowns upon such practice. It is a matter for the determination of the trial judge.

■■ It is difficult to see any difference in principle between radio broadcasting of court proceedings and the publication of the same in newspapers. The fundamental principles of the law of libel applicable to the publication of judicial proceedings by newspapers apply also to the broadcasting of such proceedings by radio stations: *Sorensen v. Wood*, supra; *Miles v. Wasmer*, supra. In the instant case there was no comment by the radio company concerning the proceedings. All it did was to transmit to the public a true and accurate report of what was going on in the trial of the murder case.

■ Eliminating from further consideration the alleged liability of the defendant Ashurst, we now discuss the case against the defendant Vandenberg, who acted

as counsel and whose argument to the jury is alleged to have been libelous per se. Of course, if no cause of action exists against Vandenberg, it follows that the defendant broadcasting company and its manager are not liable. Otherwise stated, if the argument made by Vandenberg in a court proceeding was qualifiedly privileged, the publication thereof by the defendant broadcasting station would likewise be privileged: *Israel v. Portland News Pub. Co.*, 152 Or. 225 (53 P. (2d) 529, 103 A. L. R. 470).

██ Under the rule in England no action will lie against a barrister for defamatory words spoken as counsel in the course of any judicial proceeding even though they were irrelevant to the issue and uttered maliciously: Newell on Libel and Slander, § 362. Such absolute-privilege with reference to counsel does not obtain in this country. A communication made by an attorney in a judicial proceeding is absolutely privileged if it is pertinent and relevant to the issues, although it may be false and malicious: *Pitts v. King*, 141 Or. 23 (15 P. (2d) 379, 472); 36 C. J. 1252. He cannot, however, in a judicial proceeding, utter defamatory matter wholly foreign to the issues and be protected under the shield of qualified privilege. To recover, therefore, against the defendant Vandenberg it was incumbent upon plaintiff to establish that the alleged defamatory matter spoken of and concerning her was irrelevant and impertinent to the issues in the murder case and that it was uttered with express or actual malice: *Cooper v. Phipps*, 24 Or. 357 (33 P. 985). As stated in *Lawson v. Hicks*, 38 Ala. 279 (81 Am. Dec. 49):

"If the communications be irrelevant they do not necessarily become actionable. They must be malicious as well as irrelevant. Because they were uttered in the course of judicial proceedings the law does not draw

the inference of malice from their injurious character, but requires from the complainant party proof of actual malice * * * The communications of counsel and parties made in the due course of judicial proceedings are, therefore, not only absolutely privileged when relevant, but cannot constitute a cause of action although irrelevant, unless they are in fact malicious.''

Chief Justice Shaw in *Hoar v. Wood,* 3 Metc. [Mass.] 193, quoted with approval by this court in *Cooper v. Phipps,* supra, said:

''We take the rule to be well settled by the authorities that words spoken in the course of judicial proceedings, though they are such as impute crime to another, and therefore, if spoken elsewhere, would import malice, and be actionable in themselves, are not actionable if they are applicable and pertinent to the subject of inquiry. The question, therefore, in such cases is not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relevant and pertinent to the cause or subject of inquiry.''

Was the argument of the defendant Vandenberg to the jury in reference to the plaintiff relevant and pertinent to the issues? Defendant does not admit having used in his argument to the jury the identical words as set forth in the complaint. Neither does he agree with the report of the proceedings as made by the official court reporter. It is his contention, and he so testified, that plaintiff, in answer to his questions on cross-examination in the murder trial, stated that she used a narcotic drug over a long period of years and that the actions of plaintiff while on the witness stand ''were no more than those of a mind sick from the use of narcotics''. Defendant admits that he stated plaintiff was not truthful and that she ''was lower than a rattle-

snake because a rattlesnake gives warning before it strikes''.

■ In determining whether the argument was pertinent or relevant to the issues, courts are liberal and the privilege, as stated in 36 C. J. 1252, ''embraces anything that may possibly be pertinent. All doubt should be resolved in favor of its relevancy or pertinency.'' Citing numerous cases in support of the text. In Newell on Libel and Slander (4th Ed.) § 376, it is stated:

''Much allowance should be made * * * for the ardent and excited feelings of the fearless, conscientious lawyer who must necessarily make his client's cause his own.''

In *Andrews v. Gardiner*, 224 N. Y. 440 (121 N. E. 341, 2 A. L. R. 1371), Mr. Justice Cardozo, who now graces the United States supreme court, said:

''There is no room in such matters for any strict or narrow test. Much must be left to the discretion of the advocate. The privilege embraces anything that may possibly be pertinent.'' Citing *Youmans v. Smith*, 153 N. Y. 214, 47 N. E. 265.

■ It may well be that the argument of counsel in reference to plaintiff—assuming it was as alleged by plaintiff—was extremely harsh and unjust, but the vital question is whether it was foreign to the issues of the case. The credibility of the plaintiff was put in issue when she took the stand and testified as a witness. Counsel had the absolute privilege of making such deductions as he saw fit if they were relevant and pertinent to the issues, even though they were false and he was actuated by improper motives. An argument may be false and malicious and still be pertinent.

■ Since there was a dispute as to what Vandenberg said—the argument was not taken by the court reporter—and as to what the plaintiff said about the use

of narcotics, the trial court submitted the question of relevancy and pertinency to the jury. The trial court thus clearly and ably instructed the jury:

"The court instructs you, words spoken in a judicial proceeding although they are such as to impute crime to another and, therefore, *is* spoken elsewhere would be actionable in themselves, are not actionable if they are applicable and pertinent to the subject of the inquiry.

"The question, therefore, in this case is not whether the words spoken are true, and the question is not whether the words spoken are actionable in themselves, but whether they were spoken in the course of a judicial proceeding and whether they were relevant and pertinent to the inquiry of the Meyerle case.

"The court instructs you, that the burden is upon the plaintiff in this case, Mrs. Irwin, to establish by a preponderance of the testimony, that Mr. Vandenberg did speak language she claims he used or language of similar import, and that the language used by him, was not pertinent and relevant to the evidence in the Meyerle case, and that he uttered said words in malice. Unless she sustains the burden of proof in that respect, your verdict will be for the defendants.

"I instruct you that an attorney at law had the right, and it is his duty, in a defense of a client in a criminal case, in his argument to the jury to call attention to contradictions in the testimony and to point out the weak points in the testimony, and the attorney would be within his rights to point out the manner in which the witness testified and anything unusaul in their actions upon the stand.

"I instruct you further, in order for the plaintiff to recover judgment against Mr. Vandenberg and the other two defendants, or either of them, she would have to show that the words Mr. Vandenberg spoke were not pertinent to the matter in issue in that case and also that he spoke them maliciously and with a view to defame her and if the words were pertinent to the matter in hand he would be immune from action here even though his motive was malicious in uttering them. In

short, the court instructs you, that before Mrs. Irwin can recover in this case she must prove: First, that the words spoken were not pertinent to the matter then in hand and, second, that they were spoken in bad faith and with an attempt to injure the plaintiff.''

Relative to the specific question of pertinency, the court instructed:

"I have used the words 'pertinent' and 'relevant'. These, gentleman, are *sunomonous* words and simply mean related to the subject or matter in hand.

"In determining what is pertinent much latitude must be allowed to the judgment and discretion of those who are entrusted with the conduct of the cause in court and a much larger allowance made for the ardent and excited feeling with which an attorney who, naturally and almost necessarily identifies himself with his client, may become animated by constantly regarding one side only of an interesting animated controversy in which the dearest rights of such party becomes involved. And, if these feelings sometimes manifest themselves in strong invectives or *exaggreated* expressions, beyond what the occasion would strictly justify, it is to be recollected that this is said to be a court which hears both sides. This privilege must, of course, have some limit, and that limit is this: An attorney must not avail himself of his situation to gratify private malice by uttering slanderous expressions, either against a party litigant or a witness which have no relation to the cause or subject matter of the inquiry.

"If you find Mr. Vandenberg made statements alleged in the Complaint; that he made them and they were not evidence in the case and no fair *cooemt,* under the rules I have given, and that he made them recklessly or attempted to defame the character of Mrs. Irwin, then your verdict in that case should be for the plaintiff.''

The jury by its verdict in favor of the defendants must necessarily have found that what Vandenberg said was pertinent to the issues or, assuming that it

was not pertinent, that he was not actuated by express malice.

 No exceptions were taken to the instructions given by the court, but counsel did except to the failure of the court to give requested instructions Nos. 1 to 21, inclusive. The charge, considered in its entirety, fairly submitted the cause to the jury. All the instructions requested which were proper were covered by the court. The charge given reflects much thought and study by the trial judge.

 Plaintiff contends that defendants are not entitled to rely upon the plea of privilege since they did not admit publication of the alleged defamatory matter set forth in the complaint. We think the answers admit the substance of the charge. It was not necessary to admit all the words charged, in order to rely upon a plea of qualified privilege. Defendants' plea, which is in the nature of confession and avoidance, admitted enough of the charge to give plaintiff an apparent right of cause of action: 37 C. J. 47; *Edwards v. Kevil,* 133 Ky. 392 (118 S. W. 273, 28 L. R. A. (N. S.) 551, 134 Am. St. Rep. 463).

The judgment of the lower court is affirmed.

BAILEY and LUSK, JJ., not sitting.

RAND, J., dissents as to George Kincaid, David R. Vandenberg, and KFJI Broadcasters, defendants.