Argued January 19; affirmed January 30, 1940

McKINNEY *v.* COOPER

(98 P. (2d) 711)

Department 2.

*Herbert P. Welch,* of Lakeview, for appellant.

*Henry E. Perkins,* of Klamath Falls, for respondent.

BELT, J. This is an action to recover damages resulting from an alleged libel published of and concerning the plaintiff. A demurrer to the complaint was sustained on the ground that no cause of action was alleged. On refusal of the plaintiff to plead further, a judgment was entered dismissing the action. Plaintiff appeals.

The plaintiff in his complaint alleges:

"That plaintiff is a citizen and resident of Lakeview, County of Lake, State of Oregon, and is now, and was, during all the times herein mentioned, a regularly licensed attorney at law in the State of Oregon, with offices in Lakeview, Oregon.

"That on or about the 10th day of February, 1931, Harry S. Stone was appointed by the County Court of Lake County, Oregon, Executor of the Last Will and Testament of Lewis A. Carriker, Deceased, and held such position until the 26th day of February, 1935, when he resigned as such Executor; that on the 26th day of February, 1935, he filed with County Clerk of Lake County, Oregon, his final account and report as Executor of said estate.

"That during the time between the —— day of June, 1933, and the said 26th day of February, 1935, plaintiff herein was attorney for the said Harry S. Stone as Executor of said estate.

"That on the 27th day of February, 1935, W. W. Switzer was appointed by the County Court of Lake County, Oregon, Administrator with the Will Annexed of the Last Will and Testament of Lewis A. Carriker, Deceased, and ever since said time the said W. W. Switzer has been, and now is, the duly qualified and acting Administrator of said estate.

"That on or about the 27th day of February, 1935, the defendant herein became attorney for the said W. W. Switzer as Administrator of said estate, and ever since said date the said defendant has been, and now, is acting as attorney for the said W. W. Switzer as such Administrator.

"That on the 15th day of June, 1935, the said defendant caused to be filed with the County Clerk of Lake County, Oregon, objections in writing to the final account and report of the said Harry S. Stone Executor resigned of the Last Will and Testament of the said Lewis A. Carriker, Deceased, and in said list of objections so filed, among other things, it is alleged that the said Harry S. Stone appropriated money and property of the said estate to his own personal use, and it is further alleged in various and divers places in said list of objections that the said Harry S. Stone stole various articles or items of personal property from the said estate while he was acting as such Executor.

"That in the list of objections so filed by the said defendant, particular objection was made to the allowance of an item of $249.50 which had been paid by the said Harry S. Stone to plaintiff on account of attorney's fees for services performed for said Harry S. Stone, as Executor of said estate; and in filing said objection the defendant caused the following libel to be published of and concerning this plaintiff to-wit:

'That for a sixteenth objection to the final account and administration of Harry S. Stone, executor resigned, the objectors allege:

I.

'The objectors object to the following items of expenditure set forth in said final account on page 14 thereof, to-wit: "February 23, 1935, T. S. McKinney, attorney fees $249.50," and in support of such objection further allege:

II.

'That services of such value were not rendered by the said T. S. McKinney to the estate.

### III.

'That at all times that said T. S. McKinney was retained as attorney for the executor resigned, he owed a duty to disclose to the devisees and legatees of the estate the true condition thereof whenever requested for such information. That he was at all times entitled to payment for services rendered the estate, with funds of the estate, a fact which he well knew, and therefore, owed a duty to the devisees and the legatees as well as to their representative, the executor resigned.

### IV.

'That on May 1, 1934, a conference was held in the office of the said T. S. McKinney, attorney at law, at Lakeview, Oregon, at which there were present the said T. S. McKinney; the executor resigned; Lewis N. Wiley, one of the devisees and legatees of the last will and testament of Lewis A. Carriker, deceased, and one of the objectors; Lester K. Vandever, attorney at law, Hillsboro, Illinois, then and there acting as attorney for most of the devisees and legatees of the estate; and Forrest E. Cooper, attorney at law, Lakeview, Oregon, then and there serving in a similar capacity.

### V.

'That one subject then and there discussed was ways and means of obtaining an appeal bond in the case of C. V. Vandiver and wife versus the executor resigned and all of the beneficiaries of the estate. The executor resigned and the said T. S. McKinney then and there stated that the bonding companies had refused to write the bond. They were then and there asked if it were not true that the estate had cash then and there on deposit in the Commercial National Bank of Lakeview, Oregon, in the approximate sum of $4,000 which together with certain certificates of deposit could be pledged as protection for a surety company. That the executor resigned then and there asserted that he had said cash on hand in said bank but that the same would not satisfy the surety company. That the said T. S. McKinney then and there knew that the executor re-

signed did not have a cent of estate funds on deposit in said bank for the reason that as of that date he had converted every cent of estate funds to his own personal use. That the said T. S. McKinney then and there refused to disclose the true facts to the said Lewis N. Wiley, Lester K. Vandever and Forrest E. Cooper, and permitted said lie of the executor resigned to stand as the truth.

### VI.

'That the said T. S. McKinney then and there handed to the said Forrest E. Cooper, attorney, a true copy of the sixth semi-annual report of the executor resigned which he was about to file with the Court. That said report, which was intended for the information of the beneficiaries was false, and the said T. S. McKinney then and there knew the same to be false in that the entry therein, to-wit, "Cash on hand $3,834.38" was not true for the reason that on April 10, 1934, the executor resigned withdrew from The Commercial National Bank of Lakeview, Oregon, the then sole depository of estate funds, the balance in the estate account, to-wit: $897.13, and had converted the same to his own use, to the end that in truth and in fact the executor resigned then and there had no cash on hand whatsoever.

### VII.

'That at all times mentioned herein the relation of attorney and client existed between the said T. S. McKinney and all of the devisees and legatees of the last will and testament of Lewis A. Carriker, deceased, for the reason that at all times mentioned herein the said T. S. McKinney was defending for said persons the suit brought against them by C. V. Vandiver and wife, which cause is well known to the Court.

### VIII.

'That on or about May 2, 1934, the said T. S. McKinney presented to the Court on behalf of the executor resigned what was purported to be the original sixth semi-annual report of said executor resigned. That

the Court then and there requested that the said T. S. McKinney attach thereto the certificate of The Commercial National Bank of Lakeview, Oregon, showing the true status of the certificates of deposit that the executor resigned claimed to have, together with a statement as to the true condition of the estate bank account. Said request was never complied with for the reason that to have done so would have exposed the fraudulent and criminal conduct of the executor resigned.

### IX.

'That the said charge of $249.50 represents payment for services rendered by the said T. S. McKinney down to and including the date of resignation of the said Harry S. Stone, executor resigned.

### X.

'That the entire course of professional conduct of the said T. S. McKinney from May 1, 1934, down to and including the preparation of the final account of the executor resigned and down to and including the date of his resignation reveals that his time and energy were primarily employed in advising and assisting the executor resigned in concealing his fraudulent and unlawful acts and in advising and assisting him in endeavoring to escape the legal consequences thereof to the resulting loss of the estate of Lewis A. Carriker, deceased, the sole source of payment for said professional services.

### XI.

'That it is improper and unjust that the estate be burdened with the cost of professional services rendered for the exclusive personal benefit of the executor resigned.

'Wherefore, the objectors pray that a decree be entered upon the final account of the executor resigned, commanding and requiring him to refund to the estate the said sum of $249.50 of estate funds paid to the said T. S. McKinney, on February 23, 1935, with interest thereon at the rate of six per cent per annum until paid.'

"That the aforesaid libel is false and malicious, and the whole thereof was maliciously published of and concerning this plaintiff by the said defendant herein.

"That immediately upon the filing of the aforesaid objections to the said final account of Harry S. Stone, the same was placed in the files of the probate proceedings of the Estate of Lewis A. Carriker, deceased, and thereupon said document became a permanent record in the office of the County Clerk of Lake County, Oregon, subject to inspection by county officials, attorneys, and all other persons, and said document has been read by county officials, attorneys, and various other persons, and by reason thereof this plaintiff has suffered great mental anguish, and has been greatly injured in his good name, his reputation, and his profession; and plaintiff alleges that the said publication is libelous per se and that he has been damaged in the sum of $25,000.00 because of the publication of said libel."

■ It appears from the face of the complaint that the alleged defamatory matter contained in the written objections to the final account was made in a court of competent jurisdiction engaged in the administration of an estate. If the objection filed with the county clerk was relevant and pertinent to the issue before the court for decision, it is absolutely privileged and no action based thereon can be maintained against the defendant, who was employed as attorney in the administration of the estate. It is wholly immaterial whether the statements made against the allowance of attorney's fees to plaintiff are true or false. Neither is it material whether the defendant in making such statements was actuated by good or bad motives. The vital question is whether they were pertinent and relevant. The law applicable herein is so well settled and established in this jurisdiction and elsewhere that there is no need of encumbering the reports by a restatement

thereof. *Irwin v. Ashurst,* 158 Or. 61, 72 P. (2d) 1127; *Pitts v. King,* 141 Or. 23, 15 P. (2d) 379, 472; *Cooper v. Phipps,* 24 Or. 357, 33 P. 985, 22 L. R. A. 836; *Bussenwitz v. Wisconsin Teachers' Association,* 188 Wis. 121, 205 N. W. 808, 42 A. L. R. 873, and note; 17 R. C. L. 335.

██ Whether the matter contained in the objections to the final account was pertinent or relevant is a question of law for the court to decide. In determining whether such matter is pertinent or relevant, courts are liberal and hold the privilege ''embraces anything that may possibly be pertinent''. *Andrews v. Gardiner,* 224 N. Y. 440, 121 N. E. 341, 2 A. L. R. 1371, cited with approval by this court in *Irwin v. Ashurst,* supra.

■ Certainly, the beneficiaries of the estate were interested parties and had the right to inquire as to the expenditures by the executor in the administration of the estate. The defendant as attorney had the legal right to file objections to the final account. If the statements made against the allowance of the attorney's fees in question were true, it was a proper matter for the court to consider in determining whether to approve the final account. Clearly, the matter of which the plaintiff complains was pertinent and relevant to the issues, and it so appears from the face of the complaint.

It follows that the trial court was right in sustaining a demurrer to the complaint.

The judgment dismissing the action is affirmed.

RAND, C. J., and LUSK and BAILEY, JJ., concur.