Argued January 21; Affirmed March 9, 1948

STRYCKER *v.* LEVELL and PETERSON

190 P. (2d) 922

*Elton Watkins,* of Portland, argued the cause and filed a brief for appellant.

*Harry G. Hoy,* of Portland, argued the cause for respondents. With him on the brief was Arthur E. Prag, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, BAILEY, BRAND and HAY, Justices.

BRAND, J.

◼ This is a companion case to, and rose out of the litigation in the case of Levell v. Levell, decided March 2, 1948. The allegations of the complaint which on demurrer must be considered true, establish for present purposes the following facts: Lura H. Strycker is the mother of Esther M. Levell, divorced wife of defendant David W. Levell. The defendant, Albert Peterson is the former husband of the plaintiff, Lura H. Strycker. Esther M. Levell secured a decree of divorce from the defendant David W. Levell, together with the custody of two infant children. The decree required the father, David W. Levell to contribute $50.00 per month for the support of the children and gave to the father the reasonable right of visitation.

The complaint alleges that the father, David W. Levell filed in the divorce suit a motion for the modification of the decree as follows:

"COMES now the defendant and respectfully applies to the above entitled Court for an order thereof modifying the decree heretofore made and entered in the above entitled case so that the said decree as modified will contain a provision that the children must be kept within the jurisdiction of the

Court and are not to be removed therefrom, except upon order of the Court after ample notice to the opposing party and on opportunity to be heard thereon and that while the said children are not kept within the jurisdiction of the Court the provision for the payment of support money shall be suspended, and that while the plaintiff has the custody of the children, the said children shall be kept free from the influence of and association with immoral persons.

"This Motion is based upon the records and files in the above entitled suit and upon the affidavit of the defendant which is hereunto annexed and by this reference made a part and parcel hereof."

In support of his motion for an order that "the said children shall be kept free from the influence of and association with immoral persons", the complaint alleges that the defendant, David W. Levell filed an affidavit which reads in part as follows:

" * * * I am disturbed at the fact that the plaintiff apparently has her mother as a member of the household, the mother being a person of lax morals and with a very strong hatred for this plaintiff. I feel that it is not fair to me that the plaintiff's mother should be in the household with my children, as she is not a fit or proper person to associate with growing children, and she has such an unreasonable dislike for me that it is certain she will endeavor to prejudice the children against me."

In answer to the motion and affidavit of the defendant David W. Levell, the complaint further alleges that the plaintiff, Lura Strycker filed an affidavit in the supplemental proceedings in the divorce suit stating that she resided in San Francisco, California where she was employed. That Esther Levell and her children lived in Vallejo, California, and that

" * * * the affidavit of David W. Levell that this plaintiff was living with and as a member of the household of the said Esther M. Levell and her children was untrue."

It will be observed that the complaint in the libel suit does not affirmatively state that Mrs. Strycker was not living as a member of the household of her daughter, Esther, but only states that she once made an affidavit to that effect. The complaint further alleges that in February, 1947, David Levell and Al Peterson conspired fraudulently and maliciously to injure plaintiff's good name by filing further affidavits in the divorce suit. We quote the material portions of the affidavits so filed. The affidavit of David Levell is in part as follows:

"On my visit to the home of Esther M. Levell on the afternoon before Christmas, I did not state, as alleged by her mother in her affidavit, that I had a legal right to see her, my ex-wife. I did state that I felt I had a legal right to see my children. It is not true that Esther's mother offered to bring the children to me * * *. I had no opportunity to talk with anyone there because Mrs. Strycker, when I asked to see the children, slammed the door in my face and locked it from the inside. * * *"

"While I did not state in my affidavit, to which reference is hereby made, that my ex-wife's mother lives with her, I did state that she apparently was living in that home. I made this statement because my ex-wife had written me to send a letter to her General Delivery stating what hotel I was stopping at and she would send the children to the hotel with her mother. I assumed from that statement that her mother was probably living with her. That the mother is a woman of low morals is well known to me and is also well known to her daughter, Esther M. Levell, and the statement made in her affidavit

to the effect that her mother is not a woman of low morals is absolutely and knowingly false. While we were living together as husband and wife we formerly attended dances on the Battleship Oregon and similar affairs, and Esther's mother would frequently be there and on many occasions was drunk and on many occasions we found her in compromising positions with various men who attended the said dances. It was a matter of common knowledge with us, and of more than occasional comment between us, that her mother was lax morally. * * * I believed implicitly in my then wife, and I had married her with knowledge of some of her mother's shortcomings because I had seen the mother intoxicated and I had seen her in bed with a strange man in Roseburg at the Eagles convention which was held, I believe, in June of 1940. I know that it was prior to my marriage and that Mrs. Strycker had ridden in my car with other people whom I took to the convention at Roseburg. Together with some others we were serenading various people attending the convention, entering rooms at the hotels and among other rooms was the one in which I noticed Esther's mother in bed with a stranger.

"During the time that I was married to Esther Levell, we saw as little of her mother as we could, as we both felt the same way regarding her, that is to say, that we did not wish to associate with her and were heartily ashamed of her manner of conducting herself.

"Referring now to that affidavit of Lura H. Strycker in which she states that upon my knocking at her daughter's door, the daughter 'asked me to answer the door.' This statement is false, as the door was answered by a boy whom I did not know, and he said he did not know Esther or Mrs. Levell. After the boy had come to the door and opened it, Mrs. Strycker came to the door and upon my asking to see my ex-wife and children and stating that I had a legal right to see my children, slammed the door in my face and locked it."

The affidavit of the defendant, Albert Peterson which was filed in support of the motion of the defendant Levell is in part as follows:

"I, AL PETERSON, being first duly sworn, depose and say: That I am well and personally acquainted with Lura H. Strycker, mother of Esther M. Levell, former wife of David W. Levell. That I was formerly married to the said Lura H. Strycker. I further depose and say that I first met the said Lura H. Strycker and became slightly acquainted with her in a beer parlor. That she afterwards invited me to her house, where she was living alone, except that her youngest daughter, approximately nine years old was living with her a part of said time.

"That at her invitation shortly after I became acquainted with her I came to her said home on her invitation that I come and partake of intoxicating liquors with her there. That for a considerable period of time and before there was any talk of marriage, we lived together in lewd cohabitation. That later I married the said Lura H. Strycker and that I know of my own knowledge that she had a very strong hatred for her son-in-law, David W. Levell. * * *"

The affidavit then relates in detail a drinking party in which the plaintiff Strycker became intoxicated and quarrelsome. The affidavit continues:

"That I have no hesitancy in saying that she, the said Lura H. Strycker, is a woman of bad morals, addicted to the use of intoxicating liquors to excess and she will stop at nothing to injure anyone toward whom she acquires, or has, a dislike such as she had against the said David W. Levell. I also did not hesitate to say that the said Lura H. Strycker, as well as her sister, were very active in their efforts to effect a separation between Dave and his wife, Esther. That my wife had poisoned me against the said David W. Levell and it was at her instance and through her per-

suasion that I made the attack upon him on that evening, together with her. That afterwards when I sobered up and ascertained the true situation, apologized to the said David W. Levell for my conduct.

"That some time after that I returned home from my work and found my wife had moved out, taking everything out of the house, including my own personal belongings and it was several months before I was able to ascertain whence she had gone. That I did not contest the divorce because I, myself, felt that this unfortunate alliance with this dissolute woman should be dissolved.

"I have been told that she testified at the trial that I came home drunk practically every day during the latter days of our living together. which, of course, was absolutely false, as during all of that time, I was engaged in the driving of a freight truck, operating a motor vehicle and could not in the very nature of the thing have returned home drunk, as I understand she testified. Knowing her as I do, I do not doubt that she did testify falsely and I feel sure that she must have testified falsely in order to obtain a decree of divorce, dissolving the marriage at her instance on the theory that she was an innocent party."

■ The complaint continues with a long innuendo as to what the defendants meant and intended to be understood as meaning in their respective affidavits. The innuendo was unnecessary. The words were unambiguous and constituted actionable libel unless priviledged.

In her complaint the plaintiff was not content to allege merely the publication of defamatory matter. She went further. She shows that a legal controversy had arisen between Esther and David Levell as to the manner in which Esther was conducting herself as custodian of the minor children of the marriage. She

shows that the issue was properly raised by motion in the court which had granted the divorce and which retained jurisdiction to modify the decree as to the children. She shows that one of the issues before the court was whether or not the mother was causing or permitting an immoral person to associate with the children or to interfere with the right of visitation which the court had granted to the father. It was the duty of the trial court to determine the facts upon these issues. If this be true, then the defendant, David W. Levell was entitled to present evidence for the consideration of the court and to offer to the court in addition to his own statement, the affidavit of the defendant Peterson. In the early case of *Cooper v. Phipps,* 24 Or. 357, 33 P. 985, 22 L. R. A. 836, the court said:

> "* * * While there is some conflict in the adjudged cases as to whether witnesses are absolutely exempt from liability to an action for defamatory words uttered or published in the course of judicial proceedings, it is agreed by all the authorities that they are presumptively so, and before a witness can be held liable in a civil action, this presumption must be overcome by showing affirmatively that such statements were not only false and malicious, but that they were not pertinent to the issues, and not in response to questions asked by counsel. * * * 'The question, therefore, in such case is not whether the words spoken are true, not whether they are actionable in themselves, but whether they were spoken in the course of judicial proceedings, and whether they were relative [relevant] and pertinent to the cause or subject of inquiry.' "

In *McKinney v. Cooper,* 163 Or. 512, 98 P. (2d) 711, the court said:

> "It appears from the face of the complaint that the alleged defamatory matter contained in

the written objections to the final account was made in a court of competent jurisdiction engaged in the administration of an estate. If the objection filed with the county clerk was relevant and pertinent to the issue before the court for decision, it is absolutely privileged and no action based thereon can be maintained against the defendant, who was employed as attorney in the administration of the estate. It is wholly immaterial whether the statements made against the allowance of attorney's fees to plaintiff are true or false. Neither is it material whether the defendant in making such statements was actuated by good or bad motives. The vital question is whether they were pertinent and relevant. * * *

"Whether the matter contained in the objections to the final account was pertinent or relevant is a question of law for the court to decide. In determining whether such matter is pertinent or relevant, courts are liberal and hold the privilege 'embraces anything that may possibly be pertinent.' * * *" And see *Irwin v. Ashurst,* 158 Or. 61, 74 P. (2d) 1127.

■ In substantial support of the Oregon rule we cite the Restatement, Torts, Vol. 3, §§ 587, 588, as follows:

"A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto."

"A witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as a part of a judicial proceeding in which he is testifying, if it has some relation thereto."

68

■■ Since the plaintiff by her complaint has established that the statements made by the defendants were filed for consideration by a court having jurisdiction to hear and determine issues properly presented, we think it was incumbent upon the plaintiff to allege facts showing that the libelous material was irrelevant to the issue. This she has not only failed to do, but she has affirmatively indicated that the statements made were relevant to the issue. The plaintiff asserts that this is an action on the case for conspiracy, but we see in it only an allegation that the defendants maliciously and falsely agreed to make and made certain libelous statements, which statements were protected under the rule of absolute privilege. The plaintiff cannot avoid the defense of privilege which appears in her own complaint by giving to a libel suit the name of an action on the case for conspiracy.

The judgment of the trial court is affirmed.