Argued and submitted July 17, the judgment for each of the
defendants is reversed and the case remanded for trial November 2,
respondent K-Mart's reconsideration denied December 4,
respondent Golden's reconsideration denied December 23, 1981,
both petitions for review denied January 26, 1982 (292 Or 450)

BODEWIG,
*Appellant,*

*v.*

K-MART, INC. et al,
*Respondents.*

(11,793, CA 18959)

635 P2d 657

W. Eugene Hallman, Pendleton, argued the cause for appellant. With him on the briefs were Mautz & Hallman, Pendleton, and Gary Susak, P.C., La Grande.

Samuel Tucker, Pendleton, argued the cause for respondent K-Mart, Inc. With him on the brief were John H. Kottkamp, and Kottkamp & O'Rourke, Pendleton.

Robert W. Collins, Pendleton, argued the cause for respondent Alice Golden. With him on the brief was Collins & Collins, Pendleton.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this tort action for outrageous conduct, plaintiff seeks damages against her former employer, K-Mart, and a K-Mart customer, Mrs. Golden. Both defendants moved for summary judgment, which the trial court granted. Plaintiff appeals from the resulting final judgments entered. We reverse and remand.

Our review of the pleadings, depositions and affidavits is in the light most favorable to the party against whom the motion is filed. *Stanfield v. Laccoarce,* 288 Or 659, 665, 607 P2d 177 (1980); *Jones v. Oberg,* 52 Or App 601, 603, 628 P2d 773 (1981). On the evening of March 29, 1979, plaintiff was working as a part-time checker at K-Mart. Defendant Golden entered plaintiff's checkout lane and plaintiff began to ring up Golden's purchases on the cash register. When plaintiff called out the price on a package of curtains, Golden told plaintiff the price was incorrect because the curtains were on sale. Plaintiff called a domestics department clerk for a price check. That clerk told plaintiff the curtains in question were not on sale. Upon hearing this, Golden left her merchandise on plaintiff's counter and returned with the clerk to the domestics department to find the "sale" curtains.

After Golden left, plaintiff moved Golden's merchandise to the service counter, voided the register slip containing the partial listing of Golden's items and began to check out other customers. Three to ten minutes later, Golden returned to plaintiff's checkstand, where another customer was being served. Golden "looked around" that customer and asked what plaintiff had done with her money. When plaintiff replied, "What money?", Golden said that she had left four five-dollar bills on top of the merchandise she was purchasing before she left with the domestics clerk. Plaintiff told Golden she had not seen any money. Golden continued in a loud, abrupt voice to demand her money from plaintiff and caused a general commotion. Customers and store personnel in the area began to look on curiously.

The K-Mart manager, who had been observing the incident from a nearby service desk, walked over to plaintiff's counter. After a short discussion with Golden, he

walked up to plaintiff, pulled out her jacket pockets, looked inside and found nothing. Then he, plaintiff and two or three other store employes conducted a general search of the area for the money. When this effort proved fruitless, the manager explained there was nothing more he could do except check out plaintiff's register. Golden said, "Well, do it." The manager and an assistant manager locked plaintiff's register and took the till and the register receipt to the cash cage. While the register was being checked, Golden continued to glare at plaintiff while plaintiff checked out customers at another register. The register balanced perfectly. When the manager so advised Golden, Golden replied that she still believed plaintiff took her money and continued to "cause commotion" and glare at plaintiff. A further general search of the surrounding area was conducted without success. Golden still would not leave; another employe was trying to calm her down.

The manager then told[1] plaintiff to accompany a female assistant manager into the women's public restroom for the purpose of disrobing in order to prove to Golden that she did not have the money. As plaintiff and the assistant manager walked to the restroom, the manager asked Golden if she wanted to watch the search; Golden replied: "You had better believe I do, it is my money." In the restroom, plaintiff took off all her clothes except her underwear while Golden and the assistant manager watched closely. When plaintiff asked Golden if she needed to take off more, Golden replied that it was not necessary because she could see through plaintiff's underwear anyway.

Plaintiff put on her clothes and started to leave the restroom when the assistant manager asked Golden how much money she had in her purse. Golden replied that she did not know the exact amount, but thought she had

---

[1] In her deposition, plaintiff stated that the manager "asked" her to disrobe. Plaintiff stated in a later affidavit that the manager "told" her to disrobe. Given plaintiff's youthful age and subservient position as an employe, her consistent statements in both her deposition and her affidavit that she believed she had no choice but to disrobe outweighs the semantic inconsistency of the two words. Whether she truthfully believed that, and, if so, whether it was a reasonable belief, is for the jury.

between five and six hundred dollars.[2] She did not attempt to count it at that time.

Plaintiff then returned to her checkstand. Golden followed plaintiff to the counter and continued to glare at her as she worked. Finally, the manager told Golden nothing more could be done for her, and after more loud protestations, Golden left the store.

Upon arriving home, Golden counted the money in her purse. She had $560. She called plaintiff's mother, whom she knew casually, and related the entire incident to her, stating that she had told K-Mart that plaintiff had taken her money. She described the strip search to plaintiff's mother and stated that when she was asked if she wanted to watch the strip, she responded, "Damn right." The mother expressed concern that plaintiff would lose her job; Golden said she would call the store and ask them not to let her go. Golden did make that call. After the conversation with Golden, plaintiff's mother, father and sister went to K-Mart to see if plaintiff was all right and to take her home.

Plaintiff returned to work the next day and was told that the keys to the cash register were lost and she was to work on a register with another employe. That procedure is known as "piggy-backing," and plaintiff had been told three months earlier that the store would no longer "piggy-back" checkers. Plaintiff believed the store was monitoring her by the "piggy-back" procedure; she quit at the end of her scheduled shift that day.

Each defendant, as the party moving for summary judgment, has the burden of showing that there is no genuine issue of material fact and that each of them is entitled to judgment as a matter of law. ORCP 47(C); *Stanfield v. Laccoarce, supra,* 288 Or at 665; *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). Because the questions relating to each defendant differ, we consider the trial court's ruling as to each of them separately.

---

[2] Other evidence indicated that Golden said she had between 300 and 500 dollars.

## K-MART

K-Mart contends that the trial court properly granted its motion, because the facts presented do not constitute outrageous conduct as a matter of law. Its principal argument is that plaintiff consented to the strip search, either expressly as its manager stated, or tacitly by not expressly objecting. Plaintiff stated, variously, that she was told or asked by the manager to disrobe, but, whether asked or told, she did not consider that she had a choice. She thought she would lose her job if she refused, and she needed the job. The issue of lack of consent to that search is an issue of fact, but whether it is an issue of material fact depends upon whether, assuming plaintiff's version to be true, the facts are sufficient to submit the case to the jury on the outrageous conduct theory.

The relatively short history and development of the tort of outrageous conduct, at least in Oregon, is summarized by the court in *Brewer v. Erwin,* 287 Or 435, 454-58, 600 P2d 398 (1979). As the court pointed out, the exact elements of the tort are still in process of clarification. There are at least two versions of the tort. One is represented by *Turman v. Central Billing Bureau,* 279 Or 443, 568 P2d 1382 (1977), and involves intentional conduct, the very purpose of which is to inflict psychological and emotional distress on the plaintiff. The other is represented by *Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971), where the wrongful purpose was lacking, but "the tortious element can be found in the breach of some obligation, statutory or otherwise, that attaches to defendant's relationship to plaintiff * * *." 287 Or at 457. The court concluded its discussion as follows:

> "* * * This court has not had occasion to consider whether in the absence of such a relationship a recovery for solely emotional distress can be based on a defendant's conduct, not otherwise tortious, that a jury may find to be beyond the limits of social toleration, though the conduct is not deliberately aimed at causing such distress but only reckless of the predictable effect. *Cf. Douglas v. Humble Oil,* 251 Or 310, 317, 445 P2d 590 (1968); compare *Melton v. Allen,* 282 Or 731, 736, 580 P2d 1019 (1978)." 287 Or at 457-58.

In *Brewer,* the court did not consider the question posed in the foregoing quote, because it found the defendant's conduct was intentional. Here, we are faced with the issue, unless there was the type of special relationship between plaintiff and K-Mart justifying recovery for emotional distress based on that defendant's conduct, which was not deliberately aimed at such distress but was reckless of the predictable effect of that conduct.

■ Neither the Supreme Court nor this court has been presented with the question of whether the employer-employe relationship falls into that special category.[3] This court, however, has treated the landlord-tenant relationship as a "prime consideration" in evaluating the defendant's conduct. *Fitzpatrick v. Robbins,* 51 Or App 597, 626 P2d 910, *rev den* 291 Or 151 (1981). We reached that conclusion because landlords were in a position of authority with respect to tenants and could affect the tenants' interest in the quiet enjoyment of their leasehold. 51 Or App at 602. An employer has even more authority over an employe, who, by the nature of the relationship, is subject to the direction and control of the employer and may be discharged for any or no reason, absent an agreement restricting that authority. Clearly, that relationship is not an arm's length one between strangers. Accordingly, we conclude that the relationship between plaintiff and K-Mart was a special relationship, based on which liability may be imposed if K-Mart's conduct, though not deliberately aimed at causing emotional distress, was such that a jury might find it to be beyond the limits of social toleration and reckless of the conduct's predictable effects on plaintiff.

■ We conclude that a jury could find that the K-Mart manager, a 32-year-old male in charge of the entire store, after concluding that plaintiff did not take the customer's money, put her through the degrading and humiliating experience of submitting to a strip search in order to satisfy

---

[3] Courts in other states have considered the employer-employe relationship a significant factor in determining whether liability for the tort should be imposed. *MBM Co., Inc. v. Counce,* 268 Ark 269, 596 SW2d 681 (1980); *Harris v. Jones,* 35 Md App 556, 371 A2d 1104, *aff'd* 281 Md 560, 380 A2d 611 (1977); *Contreras v. Crown Zellerbach Corp.,* 88 Wash 2d 735, 565 P2d 1173 (1977); *Agis v. Howard Johnson Co.,* 371 Mass 140, 355 NE2d 315 (1976); *Alcorn v. Ambro Engineering, Inc.,* 2 Cal 3d 493, 468 P2d 216 (1970).

the customer, who was not only acting unreasonably, but was creating a commotion in the store; that the manager's conduct exceeded the bounds of social toleration and was in reckless disregard of its predictable effects on plaintiff.

## GOLDEN

■ Because there was no special relationship between plaintiff and Golden, the evidence must be such that a jury could find Golden's conduct not only socially intolerable, but that it was deliberately aimed at causing plaintiff emotional distress.[4] Golden contends the evidence does not permit those findings, because she was merely trying to get her money back from plaintiff. To sustain that position, it would be necessary to resolve the disputed facts relating to Golden's conduct in her favor. As in the case against K-Mart, those factual issues are material only if, after resolving them in plaintiff's favor, the evidence would permit a jury to find for plaintiff.

■ We conclude that the facts, viewed most favorably to plaintiff, would permit a jury to find that Golden's entire course of conduct was intended to embarrass and humiliate plaintiff in order to coerce her into giving Golden $20, whether rightfully hers or not; that Golden did not know how much money she had in her purse, variously stated to be between $300 and $600, made no effort to determine if she was, in fact, missing four five dollar bills until she returned home, at which time she found she was mistaken; that Golden's insistence on a check of plaintiff's cash register, her insistence that plaintiff still had her money after the register checked out perfectly, her eager participation in the strip search of plaintiff and her continuing to stare angrily at plaintiff over an extended period, even after all efforts to find her money failed, would permit a jury to find Golden's conduct deliberately calculated to cause plaintiff emotional distress and exceeded the bounds of social toleration.

_____

[4] The court in *Brewer v. Erwin, supra,* suggested that recovery might be had in the absence of a special relationship if the defendant's conduct was otherwise tortious, even though the conduct was not deliberately aimed at causing distress. It said reckless disregard of the conduct's predictable effect is sufficient. 287 Or at 458. Here, the jury could find that Golden published a false accusation that plaintiff had stolen her money, which would be tortious conduct. Because of our disposition of this case, we need not address that question.

A jury could also find in Golden's favor, but the mere fact that her stated ultimate objective was to get her money back is not sufficient to defeat plaintiff's claim. In *Turman v. Central Billing Bureau, supra,* the defendant's objective was to collect a bill, but its methods of achieving that objective were held actionable as outrageous conduct. There are lawful (socially tolerable) ways to collect money from another, and there are unlawful (socially intolerable) ways to do so.

## EMOTIONAL DISTRESS

■    Common to her claims against both defendants is the requirement that plaintiff prove that she suffered severe emotional distress. If the facts presented are believed, plaintiff suffered shock, humiliation and embarrassment, suffering that was not merely transient. Plaintiff characterized herself as a shy, modest person, and said that she had two or three sleepless nights, cried a lot and still gets nervous and upset when she thinks about the incident. Concededly, this element of the tort has been, and still is, troublesome to courts. K-Mart contends there is no objective evidence of the distress, such as medical, economic or social problems. In *Rockhill v. Pollard, supra,* plaintiff became nervous and suffered from sleeplessness and a loss of appetite over a period of about two years. The court said:

> "* * * Defendant belittles these symptoms, but it is the distress which must be severe, not the physical manifestations. * * *" 259 Or at 63.

Defendant Golden contends that the purpose of requiring proof of severe emotional distress is to guard against fraudulent or frivolous claims and that some degree of transient and trivial distress is a part of the price of living among people.[5] Here, however, it is not unreasonable to expect that a shy, modest, young woman put in plaintiff's position would suffer the effects she claims to have suffered from the incident, and that her distress was more than that which a person might be reasonably expected to pay as the price of living among people.

---

[5] The contention relies in part on the Restatement (Second) of Torts, § 46, Comment j. (1965).

We cannot say as a matter of law that plaintiff's evidence of severe emotional distress is insufficient to go to a jury.

\* \* \* \* \* \* \*

Because neither defendant was entitled to judgment as a matter of law, neither motion for summary judgment should have been granted.

The judgment for each of the defendants is reversed. The case is remanded for trial.