Argued and submitted October 6, 1986, affirmed in part and reversed and remanded in part April 15, 1987

# FRANSON et al,
*Appellants,*

*v.*

# RADICH et al,
*Respondents.*

(A8410-06199; CA A38485)

735 P2d 632

W. Eugene Hallman, Pendleton, argued the cause for appellants. With him on the brief were Mautz & Hallman, Pendleton, and James M. Pippin and Pippin & Bocci, Portland.

David J. Sweeney, Portland, argued the cause for respondents. With him on the brief were Miles Sweeney and Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

ROSSMAN, J.

Joseph, C. J., concurring.

Buttler, P. J., specially concurring.

## ROSSMAN, J.

This is an action for intentional infliction of emotional distress and interference with custody. Plaintiffs appeal from the judgment entered after the trial court granted defendants' motion to dismiss both claims for failure to state ultimate facts sufficient to constitute a claim. We affirm in part and reverse in part.

On appeal, we accept the facts pleaded in the complaint as true, *Sommerfeldt v. Trammell,* 74 Or App 183, 187, 702 P2d 430 (1985), and read the complaint liberally to uphold it if possible. *Isler v. Shuck,* 38 Or App 233, 589 P2d 1180 (1979). It alleges that, on April 11, 1983, plaintiff Linda Franson gave birth to a baby with a severe birth defect, which doctors diagnosed as not being compatible with continuing life. On the advice of the attending physicians and their pastor, plaintiffs determined that extraordinary measures should not be taken to preserve the child's life.

On April 13, 1983, defendants Radich and Right to Life Oregon[1] notified Children's Services Division (CSD) that the child was in the hospital and suffering neglect. In an action which they initiated in circuit court they moved for a mandatory injunction to require the hospital to provide life support for the child. The court granted a temporary injunction on the same day and directed that a hearing be held on April 15 to determine whether the injunction should be made permanent. On April 14, CSD, prompted by defendants' actions, filed a petition in juvenile court charging plaintiffs with failure to provide medical treatment for their child. As a consequence, the child was removed from the physical custody of plaintiffs and taken to the University of Oregon Health Sciences Center against their wishes.

At the hearing on the injunction, defendant Radich, appearing as an attorney, a representative of defendant Right to Life Oregon and as a self-styled "friend of the court," accused plaintiffs of

"killing their infant baby; starving it to death; withholding sustenance on purpose; caring for their infant with less than

---

[1] Defendants Plinski, Association of Retarded Citizens of Coos County and Perry were dismissed and are not designated as adverse parties in this appeal.

> human treatment than is normally rendered dogs and cats; condemning their baby to death by starvation; and, starving their baby into a long, slow, agonizing death."

At the conclusion of the hearing, the court dissolved the temporary injunction and dismissed the action. On April 20, defendants filed a notice of appeal, a motion for a stay and a temporary restraining order and a request to continue the injunction, along with an affidavit signed by Radich, which stated:

> "Without intravenous or other similar methods of intraducing [sic] liquids and nutrition, [the baby] will die of starvation and dehydration long before any appeal on this matter can be heard and derived."

The child died while that case was pending in the Court of Appeals, and the appeal was dismissed.

In 1984, plaintiffs brought this action to recover for damages resulting from defendants' conduct. Their first claim is for intentional infliction of emotional distress. Defendants argue that the trial court's dismissal of that claim was correct, because (1) the facts as pled do not constitute either outrageous conduct or intentional actions, (2) the bringing of a legal action cannot constitute outrageous conduct, (3) they enjoy statutory immunity for their actions and (4) the statements on which the claim is based are absolutely privileged, because they were made in connection with a judicial proceeding. Because we conclude that the last argument prevails, we need not address the first three.[2]

Although, ordinarily, absolute privilege[3] is an affirmative defense that must be raised by answer, it may be raised by motion to dismiss if the amended complaint alleges facts which, if true, establish the privilege. *See Dell v. K.E. McKay's*

---

[2] The statutory immunity on which defendants rely, ORS 418.762, applies to "[a]nyone participating * * * in the making of a [child abuse] report [to Children's Services Division] pursuant to ORS 418.750 to 418.760." Because much of defendants' conduct which plaintiffs allege in the intentional infliction of emotional distress claim was not connected to the report of abuse, and because the other conduct alleged in that claim is immune as a matter of common law privilege, we do not reach the statutory immunity question on the first claim.

[3] The protection from liability has been termed "judicial immunity" or "absolute privilege." Because Oregon case law and Restatement (Second) Torts employ the term "absolute privilege," for the sake of consistency we will use that terminology.

*Market,* 273 Or 752, 759, 543 P2d 678 (1975); *Lee v. Nash,* 65 Or App 538, 671 P2d 703 (1983), *rev den* 296 Or 253 (1984). If the absolute privilege applies in an intentional infliction of emotional distress action to attorneys and parties involved in litigation which gave rise to the action, the complaint here alleges facts which would establish the privilege, and the issue was properly raised.

■ The complaint alleges that defendants filed the action for a mandatory injunction and made various statements in connection with the action. In *Troutman v. Erlandson,* 286 Or 3, 6, 593 P2d 793 (1979), the Supreme Court stated that it had "recognized the absolute privilege accorded communications made by attorneys in judicial proceedings." The privilege applies to anything that may be pertinent. *McKinney v. Cooper,* 163 Or 512, 519, 98 P2d 711 (1940). Although the absolute attorney privilege question most frequently arises in defamation actions, this court has held that it applies to the "publication of any matter that is an invasion of privacy." *Lee v. Nash, supra,* 65 Or App at 542. Because the privilege "is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients," Restatement (Second) Torts, § 586, comment *a* (1977) (cited with approval in *Troutman v. Erlandson, supra,* 286 Or at 7), we see no reason why it should not also apply in claims for intentional infliction of emotional distress based on actions taken and statements made in connection with a judicial proceeding.

■ The privilege that applies to defendant Radich as an attorney does not by its terms immunize her or Right to Life Oregon as parties to the action. However, Oregon law recognizes the absolute privilege accorded a party in a judicial proceeding when the communications are " ' in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto.' " *Strycker v. Levell and Peterson,* 183 Or 59, 67, 190 P2d 922 (1948) (quoting Restatement Torts, § 587 (1938)). We conclude that absolute privilege is applicable to the intentional infliction of emotional distress claim. Because the allegations remaining after disregarding those protected by the privilege do not allege conduct sufficient to make out the claim, the trial court did not err in dismissing it.

Plaintiffs also challenge the dismissal of their custodial interference claim. In *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978), the Supreme Court recognized that a parent's right to custody of a child is protected from unjustified interference. As part of the second cause of action, plaintiffs allege:

> "Defendants knew, or should have known, of the diagnosis and prognosis of the attending physicians. They also knew, or should have known, that plaintiffs sought the advice of their doctors and other qualified professionals and that plaintiffs acted in reliance thereon as to what was the appropriate care for their infant. As a result of this knowledge, defendants knew, or should have known, that Baby Franson was not suffering from neglect and was not a fit subject for the defendants' petition filed in the Coos County Circuit Court."

They also allege that, as a result of defendants' wilful conduct, plaintiffs' right to maintain the integrity of their family has been unreasonably interfered with and that they effectively lost their parental rights to physical custody of their child and to make decisions for her well-being.

The complaint adequately alleges custodial interference. Defendants' sole contention in response to this assignment is that their actions in reporting neglect are authorized by the child abuse and neglect reporting statutes (*see* ORS 418.750 to ORS 418.762) and were therefore justified as a matter of law.[4] We do not agree.

Defendants argue that they are immune from liability under ORS 418.762, which provides, in part:

> "Anyone participating in good faith in the making of a report pursuant to ORS 418.750 to 418.760 and who has reasonable grounds for the making thereof, shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed with respect to the making or content of such report."

It is not clear whether the language "[a]nyone participating * * * in the making of a report pursuant to ORS 418.750" was intended to encompass anyone who gets involved in the official handling of a purported child abuse matter, or only those persons who do so pursuant to ORS 418.750, which sets out

---

[4] They do not claim any common law privilege.

the duty of officials to report child abuse to CSD or a law enforcement agency. It provides, in part:

> "Any public or private official having reasonable cause to believe that any child with whom the official comes in contact in an official capacity has suffered abuse, or that any person with whom the official comes in contact in an official capacity has abused a child shall report or cause a report to be made in the manner required in ORS 418.755."

"Public or private official" includes attorneys, ORS 418.740(3)(m); it does not include private organizations such as Right to Life Oregon.

ORS 418.762 was enacted to ensure that Oregon would meet the qualifications for federal funding of state child abuse and neglect programs. Minutes, Senate Committee on Judiciary, April 8, 1975, p 3. The federal statute provides that, in order for a state to qualify for funding, it shall

> "have in effect a State child abuse and neglect law which shall include provisions for immunity for persons reporting instances of child abuse and neglect from prosecution, under any State or local law, arising out of such reporting." 42 USC § 5103(b)(2)(A) (1974).

The former federal regulation was more explicit:

> "The State must have in effect a child abuse and neglect law which includes provisions for immunity for *all persons* reporting, *whether mandated by law or not,* instances of known or reasonably suspected child abuse and neglect, from civil or criminal prosecution under any State or local law, arising out of such reporting." 45 CFR § 1340.3-3(d)(1) (1974). (Emphasis supplied.)

It is therefore clear that the phrase in ORS 418.762, "[a]nyone participating * * * in the making of a report" was intended to extend the immunity to everyone who reports reasonably suspected child abuse. However, this conclusion does not mean that defendants are immune as a matter of law. The statute provides that immunity attaches only when the one who reports abuse acts in good faith and with reasonable grounds. Defendants' good faith and the reasonableness of the grounds for their report do not appear on the face of the complaint, and whether immunity does or does not exist cannot be decided at the pleading stage.

Affirmed as to dismissal of claim for intentional

infliction of emotional distress; reversed as to dismissal of claim for interference with custody and remanded.

**JOSEPH, C. J.,** concurring.

I must accept both parts of the majority opinion. The part dealing with the claim of custodial interference I accept without reservation. The part dealing with the claim for intentional infliction of emotional distress has, I believe, got to be accepted because of the state of the law concerning the absolute privilege accorded statements made in connection with judicial proceedings under Oregon case law.

If the facts alleged by plaintiffs could be proved, they would establish an utterly unconscionable course of officious intermeddling on the part of defendants, for which they ought to be held to account. The absolute privilege came into being when judicial policy encouraged resort to the judicial process for the resolution of disputes. That policy is still one that ought to be accorded paramount status. Today, however, in all too many instances people seek to use the judicial process for abusive purposes. Plaintiffs' claim alleges facts that would constitute an egregious example of that.

The privilege, or immunity, was judicially created, and it can be judicially amended. I hope that the Supreme Court, if given the opportunity, will engraft a good faith and fair dealing limitation on the privilege, rendering it less than absolute. Whether or not bad cases make bad law, "bad" facts sometimes illuminate the need for law reform.

**BUTTLER, P. J.,** specially concurring.

Although I do not disagree with the majority's holding that defendants' absolute privilege bars plaintiffs' first claim for relief, I would not reach that question, because plaintiffs have not alleged sufficient facts to state a claim for the intentional infliction of emotional distress.

The critical allegation in the first claim for relief is:

"Defendants' conduct caused plaintiffs extreme emotional distress, as well as physical symptoms which required medical treatment. Defendants knew, or should have known, that plaintiffs were peculiarly emotionally susceptible and distraught at all material times mentioned here. Nevertheless,

*defendants took their actions willfully, with deliberate disregard or reckless indifference for the distress and sensitivities of the plaintiffs.* Defendants' actions were beyond the limits of social toleration. As a result of defendants' actions, plaintiffs have suffered extreme physical and emotional distress all to their general damages in the sum of $1,000,000." (Emphasis supplied.)

Although plaintiffs allege that defendants took their actions "wilfully with deliberate disregard or reckless indifference for the distress and sensitivities of the plaintiffs," they do not allege, as they must if there is no special relationship between them and defendants, that defendants *intended to inflict* severe mental or emotional distress. In *Patton v. J.C. Penney Co.,* 301 Or 117, 122, 719 P2d 854 (1986), the court set forth the elements of the tort:

"First, ordinarily a plaintiff must allege that a defendant *intended to inflict* severe mental or emotional distress. *It is not enough that he intentionally acted in a way that causes such distress.* Second, a defendant's act must in fact cause a plaintiff severe mental or emotional distress. Third, a defendant's actions must consist of 'some extraordinary transgression of the bounds of socially tolerable conduct' or the actions must exceed 'any reasonable limit of social toleration.' *Hall v. The May Dept. Stores,* 292 Or 131, 135, 137, 637 P2d 126 (1981)." (Emphasis supplied.)

If there is a special relationship between the plaintiff and the defendant, then the wrongful purpose need not be alleged, if the tortious element may be found in the breach of some obligation that attaches to the special relationship. In such a case, a recklessness standard applies. *See Brewer v. Erwin,* 287 Or 435, 600 P2d 398 (1979) (landlord and tenant); *Rockhill v. Pollard,* 259 Or 54, 485 P2d 28 (1971) (doctor and patient); *Bodewig v. K-Mart, Inc.,* 54 Or App 480, 635 P2d 657 (1981), *rev den* 292 Or 450 (1982) (employer and employe). There is no special relationship alleged here.

Accordingly, I would affirm the dismissal of the first claim for failure to state a claim. I concur with the majority's disposition of the second claim.

With respect to the concurring opinion, I share some of its concern for the absolute privilege accorded statements made during the course of judicial proceedings. However, I would approach with great care and hesitation the suggestion

that there be a good faith and fair dealing limitation engrafted on the privilege. The adversary process requires substantial freedom without fear that a jury, long after the event, might find a lack of good faith or fair dealing, even though statements made were relevant to the dispute. There is no doubt that an absolute privilege can be abused. However, if a lawsuit is commenced and maintained for a purpose other than that for which it is intended, the tort remedy for abuse of process is available.