# BRAMHALL, *Respondent—Cross-Appellant,*
*v.*
# ICN MEDICAL LABORATORIES, INC.,
*Appellant—Cross-Respondent.*
## (TC A 7608-11574, SC 25361)

586 P2d 1113

James H. Clarke, of Dezendorf, Spears, Lubersky & Campbell, Portland, argued the cause for appellant—cross-respondent. With him on the briefs were Laurence F. Janssen and Vawter Parker, of Dezendorf, Spears, Lubersky & Campbell, Portland.

Don S. Willner, of Willner, Bennett, Riggs & Bobbitt, Portland, argued the cause and filed a brief for respondent—cross-appellant.

TONGUE, J.

## TONGUE, J.

This is an action for damages for breach of a five-year employment contract. The case was tried before a jury and was submitted to it on special interrogatories. Defendant appeals from a judgment for plaintiff in the sum of $105,000. We affirm.

*Summary of the facts.*

In 1973 plaintiff was a professor of pathology at the University of Oregon Health Sciences Center, with rights of tenure, and was also the chief of clinical pathology at the adjacent Veterans Administration Hospital. As a result, he had acquired the right to pension benefits, both from the Veterans Administration and the medical school.

At this same time defendant corporation (ICN) was engaged in the operation of a large private medical laboratory, with some 900 employees. Its predecessor, United Medical Laboratories (UML), had been engaged in extensive litigation, much of which involved its former owner, a Mr. Michel, and had a poor reputation. The laboratory was also undergoing financial difficulties.

In an effort to improve the reputation of the laboratory and to "rebuild the company," defendant's president, Mr. Sobieralski asked plaintiff to become his senior scientific officer, with supervision over all laboratory operations. Plaintiff was interested, but was concerned with the bad reputation of the laboratory and with the protection of his own professional integrity. He was also concerned about the possibility that Mr. Michel might regain control of ICN, about the loss of his tenure and pension benefits, and about possible difficulty in finding employment as a pathologist in the event that his employment by ICN were terminated, due to hostility in the pathology profession toward the laboratory.

After several meetings, Mr. Sobieralski submitted to plaintiff a proposed written contract of employment.

Plaintiff was not satisfied with it and, in turn, submitted to ICN a proposed contract of employment for five years with a provision for "liquidated damages" under which if he were released by ICN during the first year he would be paid $125,000; if released during the second year—$100,000; if during the third year—$75,000; if during the fourth year—$50,000; and if during the fifth year—$25,000, in recognition of the fact that the risks would become progressively less.

That proposal was rejected by ICN. The parties then agreed, however, upon the terms of a five-year employment contract which included, as paragraph 11 d, the following provisions:

"It is understood that *Second Party is giving up substantial benefits and rights at his previous employment in order to undertake employment with United and that there should be liquidated damages for Second Party in the event of termination.* Therefore, if United terminates Second Party for any reason within the first four (4) years of employment it shall forthwith pay $50,000 to Second Party. In addition, if the termination is within three (3) years from the date when employment started, United shall pay $5,000 relocation expense to Second Party. In addition, United will forthwith purchase and maintain a $50,000 annuity with United as the owner and Second Party as the insured. * * *"

The contract also provided in paragraph 20, that:

"* * * In the event United *changes its ownership or management,* or *assigns its clinical laboratory operations to others,* Second Party shall have the right upon 120 days' notice to terminate his employment and United will be liable as provided in paragraph 11d." (Emphasis added)

As to the provision relating to change in "management," plaintiff testified that he told Mr. Sobieralski that

"* * * [I]f you leave I don't know whether I would get on with the new management, or whether they would be able to work with me * * *."

As to the provision "assigns its clinical laboratory operations to others," plaintiff testified that:

"* * * Mr. Michel used to employ pathologists to 'front.' They would receive a significant salary for being the nominal head. I was not going to be the nominal head and lend my name to an organization unless I had control of that organization."

The contract also provided:

"3. That United may increase Second Party's salary from time to time at United's sole discretion."

The contract, dated September 22, 1973, was then signed and plaintiff started to work for ICN. In November 1974 plaintiff received a copy of a memorandum from Mr. Sobieralski instructing a Mr. Kramer to "initiate the necessary paperwork to increase Dr. Bramhall's base salary to a new level of $60,000 per year, effective December 1, 1974." In December, however, Mr. Sobieralski was relieved of his duties and the increase was never paid. On the contrary, plaintiff was requested to agree to a 10 percent salary cut because of the "national depression," but declined to do so. Plaintiff then continued to work for ICN at the same salary of $50,000 per year.

In March 1976 a new president of ICN, a Mr. Fallis, was installed. Plaintiff testified that he was told by Mr. Fallis that he (Mr. Fallis) was going to assume direct responsibility for operation of the laboratory and that plaintiff would have no such authority except for what "I give you"; that plaintiff was to "stand aside and advise him"; and to "assume" a "staff function" to "assist and advise in matters relating to the upgrading of the Laboratory service." Plaintiff testified that he was then concerned that as a result of being "stripped of line responsibility" he would become "basically a name front" for the organization. He then tendered his resignation, effective August 7, 1976.

At that time plaintiff had also been receiving, in addition to his salary of $50,000 per year from ICN,

additional income from another professional corporation, from which he received a "net" of about $25,000 during 1976. He continued to receive payments from that corporation, but testified that he was unable to find employment as a pathologist.

*Submission of case to jury under special interrogatories.*

Before the case was submitted to the jury defendant contended, among other things, that the contract provision for "liquidated damages" was not enforceable because it was not related to damages that would be suffered as a result of plaintiff's subsequent termination of employment, but was a provision under which, in that event, plaintiff would be paid for *previously* "giving up substantial benefits and rights" (*i.e.,* pension rights and benefits and rights and benefits resulting from tenure), and that such a contract provision was also invalid as a provision for the imposition of a penalty. Defendant also contended that such a provision was not a valid provision for liquidated damages because the proper measure of plaintiff's damages for breach of his employment contract upon the termination of his employment would be the difference between what he was then making at ICN and what he was making or could make at the time of the trial, and that such damages were not "incapable or very difficult of accurate estimation," as required for a valid contract provision for liquidated damages.

Because of these and other contentions and because of doubt as to whether some of the questions to be decided in this case were questions of fact to be submitted to the jury or questions of law to be decided by the court, the trial judge decided to submit the case to the jury under special interrogatories. The jury was to first determine whether plaintiff's contract of employment had been breached and, if so, "what are plaintiff's actual damages, if any," before deciding whether the amount of the "liquidated damages" payable under the contract was "grossly disproportionate" to the amount of plaintiff's actual damages and

whether at the time of the contract such damages were impossible or very difficult to ascertain.

Accordingly, after denying a motion by defendant for a directed verdict, the trial judge submitted the case to the jury under the following interrogatories, which were answered by it as follows:

"1. Has the contract been breached by change of management? Yes x No __

"2. Has the contract been breached by assigning the laboratory operation to others? Yes x No __

"3. Was there a valid reduction of salary from $60,000 to $50,000? Yes x No __

"4. What are plaintiff's actual damages, if any? $110,000

"5. Has the defendant proved that at the time the contract was made the plaintiff's estimated damages on his first cause of action were grossly disproportionate to the amount of $105,000? Yes__ No x .

"6. Has the defendant proved that at the time the contract was made the plaintiff's damages on his first cause of action were not impossible or very difficult to ascertain? Yes__ No x .

"7. Was the liquidated damage clause in the contract a penalty to secure plaintiff's job right? Yes__ No x ."

The trial judge then, in an oral opinion, stated that the findings by the jury "match[ed] the court's findings as matters of law, so * * * you can cut it either way," with the exception of the jury finding that the contract had been breached by "change of management." The court held, however, as a matter of law, that the contract had been breached by "assigning the laboratory operations to others" and that the contract provision for "liquidated damages" "was set up, not as a penalty but as some measure of reasonable compensation in the event of a breach which then in fact occurred."

In addition, the trial court held as a matter of law that defendant had not proved that "plaintiff's estimated damages" were "grossly disproportionate to the

amount of $105,000," and that plaintiff had proved that in "attempting to determine what would be the damages in the event of a breach * * * it was a most difficult thing for anyone to anticipate just what would happen * * *."

The trial court also held as a matter of law that there was a "valid reduction of salary from $60,000 to $50,000."

The court then entered written conclusions of law that the contract provision for liquidated damages was valid and enforceable and that the contract did not prevent defendant from "lowering plaintiff's salary back to $50,000 a year." The court then entered judgment for plaintiff "for liquidated damages in the amount of $105,000" on plaintiff's first cause of action and dismissed with prejudice plaintiff's second cause of action for damages for the reduction of his salary from $60,000 to $50,000.

*The contract provision for "liquidated damages."*

Defendant first contends that the trial court erred in denying a motion for a directed verdict upon the ground that the contract provision for liquidated damages was invalid as a penalty, as a matter of law.

■ It is true that this contract provision for "liquidated damages" was not a provision for payment of damages accruing at the time of a prospective breach of the contract, as a "reasonable forecast of just compensation" for damages that would be "difficult of accurate estimation," which would be required for a valid contract provision for liquidated damages.[1] The primary purpose of the provision was to provide compensation for a loss of pension and other benefits which occurred when plaintiff left his previous position. In addition, the usual measure of damages for breach of

---

[1] *Dean Vincent, Inc. v. McDonough,* 281 Or 239, 241, 574 P2d 1096 (1978); *Layton Manufacturing v. Dulien Steel,* 277 Or 343, 346-47, 560 P2d 1058 (1977); *Chaffin v. Ramsey,* 276 Or 429, 434, 555 P2d 459 (1976); *Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965).

the ordinary contract of employment for a term of years is limited to the difference between the amounts payable for the remainder of the term of the contract and the amount that the plaintiff actually earned or could have earned during that same period[2]—an amount of damages not "difficult of accurate estimation."

■ It does not follow, however, that this contract provision was invalid as a penalty. Job benefits such as pension benefits are a form of compensation, sometimes referred to as "fringe benefits." There is no reason why an employee who is entitled to such benefits in his present job, but who would lose such benefits upon leaving that job, cannot enter into a valid contract with a prospective new employer for payment to him of some agreed upon amount as compensation for giving up such benefits.

This being true, it follows that a contract provision under which such a payment would not be made at the time of entering into the new employment, but only in the event of termination of such employment or upon the occurrence of specified conditions, would also be valid.

In effect, this is what the parties were attempting to accomplish in the negotiation of this contract. Plaintiff, as a pathologist at the medical center and Veterans Hospital, then had valuable pension benefits and tenure rights. He was concerned about the loss of those rights and benefits upon accepting employment with defendant. He was concerned, among other things, about defendant's bad reputation at that time as a result of its previous operation by Mr. Michel, its previous owner, who had used pathologists as a "front." He was also concerned about the possibility that in the future there might again be a change in management under which he would be removed from responsibility for direction of the operation of the

---

[2] *See* 5 Corbin on Contracts 516, 518, § 1095 (1964). *Cf. Smith v. Pallay et al,* 130 Or 282, 287, 293, 279 P 279 (1929).

laboratory and used only as a "front," with resulting reflection upon his reputation as a pathologist, making it difficult for him to then find a position as a pathologist upon the termination or expiration of the contract.

The contract provisions upon which the parties agreed as a result of these concerns were not an attempt to provide for payment to plaintiff of damages for breach of contract, but for payment to him of compensation for known benefits which were lost by him at the time of the new contract of employment. That compensation was to become payable to him upon the occurrence of specified conditions under which plaintiff was entitled to terminate his employment. In such an event, plaintiff was entitled to such payment not because of any breach of the contract by defendant, but because of the occurrence of those conditions. Thus, it was agreed that in the event that defendant "* * * assigns its clinical laboratory operations to others," plaintiff would have the right to terminate his employment and to the payment of the amounts provided in paragraph 11d of that contract.

The trial court submitted to the jury by special interrogatory the question whether the contract had been "breached by assigning the laboratory operations to others." Although that interrogatory spoke in terms of "breach" of contract, the instructions on that subject made it clear that the jury was to decide whether there was the transfer of plaintiff from a "line position, as vice president, laboratory operations, head of defendant's clinical laboratory operation, to a staff position as vice president, technical development," and whether this was the "kind" of a transfer so as to come within the intended meaning of the contract provision relating to an assignment of the "clinical laboratory operations to others."

The jury answered that special interrogatory in the affirmative. The trial judge agreed, as a matter of law. Whether the determination of that question was one of

fact or of law, we agree with the further holding by the trial court that because this condition of the contract had been satisfied, plaintiff was entitled to the payments provided under paragraph 11d of the contract, including $50,000 in cash, a $50,000 annuity and $5,000 as "relocation expense."[3] For these reasons, we hold that the trial court did not err in denying defendant's motion for a directed verdict.[4]

It also follows, for these same reasons, and also because of the manner in which the case was submitted to the jury on special interrogatories, that any error in receiving evidence as to the amount of the pension benefits that would have been payable to plaintiff by the Veterans Administration, as assigned by defendant as error, was not prejudicial.

■ For these same reasons and because of the manner in which the case was submitted to the jury on special interrogatories, we are also of the opinion that no prejudice resulted from any error in instructing the jury that it could consider plaintiff's tenure and pension rights in determining whether it would have been impossible or very difficult to estimate the damages which would result from a potential breach and whether $105,000 was "grossly disproportionate" to a reasonable forecast of the damages which would result from a breach of the contract, as required for a

---

[3] No contention is made by plaintiff by any assignment of error that it was error to enter judgment in favor of plaintiff in the total sum of $105,000, which presumably included $50,000 for such an annuity, when such an annuity could be purchased for less than $50,000.

[4] Defendant also contends that this contract provision was invalid as a penalty because it required payment of a fixed sum regardless of the date of the breach, which would be important in determining the amount of actual damages, citing *Alvord v. Banfield,* 85 Or 49, 58, 166 P 549 (1917), and Restatement of Contracts § 339(1), Comment *b* (1932).

In this case, however, the amount to be paid to plaintiff was not for future damages accruing at the time of a future breach of the contract. Instead, that amount was payable as compensation to plaintiff for giving up his rights of tenure and pension rights. Although that amount was not payable unless and until the laboratory operations had been "assigned" to "others," the amount properly payable as compensation for giving up those rights would not depend upon the date of such an event.

valid contract provision for liquidated damages, and in instructing that defendant had the burden to prove that those requirements were not satisfied.

## The cross-appeal.

■ Plaintiff cross-appeals from the dismissal of his second cause of action for damages for the reduction of his salary from $60,000 to $50,000, contending that the trial court erred in holding, as a matter of law, that the contract permitted such a reduction in salary.

As previously stated, the contract provided for an annual salary of $50,000 per year for five years and also provided that defendant "may increase" plaintiff's salary "from time to time" at defendant's "sole discretion." Defendant concedes that it scheduled an increase in plaintiff's salary in December 1974 from $50,000 to $60,000, but contends that there was no binding contract under which it was required to pay that increase to plaintiff because there was no consideration for that increase.

We agree. If plaintiff had not been employed under a contract for a specified term and had then been promised an increase in salary, his continued employment might have provided sufficient consideration for that promise so as to result in a binding contract. This would follow from the fact that plaintiff would not be required to continue to work, but could quit at any time. *See Sabin v. Willamette-Western Corp.,* 276 Or 1083, 1089, 557 P2d 1344 (1976), and *Rose City Transit v. City of Portland,* 271 Or 583, 593, 533 P2d 339 (1975). Here, however, plaintiff was employed under a contract for a fixed term which required him to work for five years at $50,000 per year, and under which any increase in his salary was wholly within defendant's discretion. It follows that his continuing to work after being promised an increase in salary from $50,000 to $60,000 per year did not provide consideration for that promise so as to result in a binding contract. It also follows that the trial court did not err

in holding that plaintiff was not entitled to require payment of the promised increase in salary.

The judgment of the trial court is affirmed.