Submitted November 20, 1978, affirmed January 29, 1979

ISLER et al, *Respondents,*
*v.*
SHUCK, *Appellant.*
(No. 74-25-E, CA 10221)
589 P2d 1180

Gerald R. Pullen, Portland, filed the brief for appellant.

Mike Ratliff, Klamath Falls, filed the brief for respondents. With him on the brief was Parks & Ratliff, Klamath Falls.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

This is an action to recover sums allegedly due as a result of defendant's activities after voluntary termination of an employment contract. Plaintiffs had a judgment for $20,085, and defendant appeals.

Prior to December, 1966, defendant had been employed as an accountant in a CPA firm. On December 1 the firm was purchased by plaintiffs, and defendant was offered continued employment. He executed an employment agreement which, so far as relevant here, provided that it could be terminated on 30 days' written notice, and that if defendant were to terminate employment he would "in no way approach any clients of the Company," pay plaintiffs "an amount equal to fifty percent (50) of the gross fees earned" from services performed in the three years after termination for any client of the company who should transfer his patronage to defendant and pay "an amount equal to ten percent (10) of the gross fees earned" from services performed in the two years after termination for defendant's own clients[1] who should continue their patronage with him.

There was an arbitration clause:

"If any question arises concerning the amount actually due the Company under the terms of the foregoing paragraphs, Applicant and the Company shall agree on a Certified Public Accountant as an independent auditor to examine applicant's records and to determine the correct amount, both parties agreeing to be bound by his decision."

After working under the agreement for five years, defendant quit. When he left, he took with him several clients, services for which were subject to the fee apportionment formula. Dispute soon arose over application of the formula, and this action resulted.

---

[1] A list of defendant's personal clients had been attached to the employment contract.

Plaintiffs' amended complaint alleged the agreement, the capacity of the plaintiffs, defendant's termination of employment and subsequent performance of services subject to the agreement, and defendant's refusal to pay. The prayer was for $33,101. Defendant demurred on the ground that the contract "provides for liquidated damages," so plaintiffs' failure to allege the elements to establish the enforceability of such a provision left the complaint without facts sufficient to state a cause of action. The demurrer was overruled. That is the subject of defendant's first assignment of error.

At the time of trial of this case the rule was that the plaintiff had the burden of pleading and proving that a contractual provision for liquidated damages is not invalid as a penalty. *See Chaffin v. Ramsey,* 276 Or 429, 435, 555 P2d 459 (1976), and cases cited at 435, n 5. That burden has now been shifted to the defendant. *Dean Vincent, Inc. v. McDonough,* 281 Or 239, 574 P2d 1096 (1978). If the rule were actually an issue here, we would apply the law as it existed when the demurrer was decided, because the rule in *Dean Vincent* was expressly made prospective in its application.

The formula was not a liquidated damage clause or a penalty clause. It was neither a provision for payment in lieu of defendant's performance nor a provision to secure performance of the contract. *Medak v. Hekimian,* 241 Or 38, 44, 404 P2d 203 (1965). Defendant had an absolute right to terminate his employment with plaintiffs and an absolute right to perform professional services without limit for former clients of the firm who should voluntarily avail themselves of those services without solicitation. He agreed to pay a fixed portion of fees earned from those services to the former employer. If the provision had to be characterized, it appears to be analogous to the purchase of a customer list.[2] *See Bramhall v. ICN*

---

[2]No claim was made that defendant violated the prohibition against contacting plaintiff's clients.

*Medical Laboratories, Inc.,* 284 Or 279, 286-88, 586 P2d 1113 (1978). The demurrer was properly overruled.[3]

Plaintiffs did not allege the performance of all conditions precedent to defendant's liability. Defendant now asserts that the demurrer should have been allowed because plaintiffs did not allege performance or an excuse for non-performance of the arbitration provision. He acknowledges that this point was not asserted as a ground of demurrer below. In fact, the defendant had refused to comply with plaintiffs' demand for arbitration. He testified at the trial:

> "* * * [T]here is no way I'm going to turn my books over to another C.P.A. firm without a direct Court order."

■ We are asked to determine the sufficiency of the complaint on an attack made after judgment, and we would afford the complaint a liberal construction to uphold it if possible. But there are no allegations in the pleading which could fairly be read to relate to conditions precedent, and the omission of a material and necessary allegation might be fatal, even after judgment. *See, e.g., Johnson v. School District No. 12,* 210 Or 585, 589, 312 P2d 591 (1957). Where, as here, the missing allegation would be formal and would not be inconsistent with the complaint as it stands, and where it could be supplied by a simple amendment, we cannot reverse if on the whole record we "determine that the omission did not result in surprise or prejudice, or prevent a full trial of the real issues between the parties, and that the evidence disclosed the existence of a cause of action * * *." *Fulton Ins. v. White Motor Corp.,* 261 Or 206, 219, 493 P2d 138 (1972). This is such a case.

---

[3]Defendant alleged as an affirmative defense that the formula constituted an unenforceable penalty clause. The trial court granted an "involuntary nonsuit" on that defense. The assignment of error based on that ruling is disposed of by the foregoing discussion of the liquidated damages argument.

■ Defendant moved for an "involuntary nonsuit" on the ground that "there is no evidence that this covenant was reasonable, and the burden of proof is on the plaintiffs to prove that it was reasonable [as] a restraint of trade." The motion was denied, and that is assigned as error.[4] In his brief, defendant accurately reviews the rules for the enforceability of covenants not to compete and says: "The difficulty, therefore, is not in defining the rules of law applicable, but in applying those rules to the facts of this case." That is also accurate, for the provisions in issue do not constitute a covenant not to compete. To be sure, every client whose fees are in issue was either agreed to have been a client of defendant's in the original contract, or was turned over to defendant with the client's approval at or since the time of termination. Defendant was perfectly free to build his practice by every means but one, and that one limitation has been strictly adhered to and is not in issue.

Defendant would have us construe the provision for the 50 percent payment as applying only to clients obtained in violation of the limitation, but construction of the contract is not an issue. Defendant asserts various other readings and possible applications of the contract in a parade of horribles, all to the effect that the required payments imposed a severe, harsh or even unconscionable economic burden on him. All of that may be true or not, but when all is said and done, defendant is not restricted in any manner actually in issue from freely practicing his profession. The agreement was not the kind to which the policy against restraints of trade is directed. *Eldridge v. Johnston,* 195 Or 379, 403-410, 245 P2d 239 (1952). A bad employment bargain does not become a restraint of trade because it is onerous. It must be shown to be an unreasonable limitation on the subject's right to engage in his calling. That was not shown here, and the motion was properly denied.

---

[4] As pointed out, *supra,* n 2, this case does not involve the provision against solicitation of clients.

■ The trial court allowed interest on the amount of the judgment from the end of the three-year period after termination of employment to the date of the judgment. That allowance of pre-judgment interest is the final assignment of error.[5]

The parties agree that the controlling rule is found in *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d 916 (1943), which held that pre-judgment interest can be allowed only:

> "* * * [w]here 'the demand is of such a nature that its exact pecuniary amount was either *ascertained, or ascertainable* by simple computation, or by reference to generally recognized standards such as market price,' and where 'the time for which interest, if allowed, must run,—that is, a time of definite default or tort-feasance,—can be ascertained.' " (Quoting 1 Sedg. on Damages (9th Ed), 571, § 300; italics in original.)

Defendant would have this rule defeat plaintiffs' claim to interest because they first alleged a claim for $33,101, amended that to $27,592 during the trial and finally, in rebuttal, claimed $20,086, which was one dollar more than the jury's verdict.[6] He says: "To determine damages involved, many objective and subjective criteria in the difficult task determining who was plaintiffs' client, who was defendant's, when this occurred, and how much was involved." The answer to that is that there could be no difficulty applying the formula once it was determined into which category (*i.e.,* 50 percent, 10 percent or zero percent) an account properly would fall. The categorization did present questions of fact, but that does not lead to the conclusion that because there were categorical disputes, there could not be a determination that defendant owed sums certain at dates certain. Even though the defendant had been totally uncooperative under

---

[5] The contract made the apportionment formula applicable to fees when they "are collected from the client." No issue is raised about the later beginning date for the allowance of interest in the judgment.

[6] A partial audit of defendant's books and a demand letter before the action had contained other amounts.

the arbitration clause and doggedly resisted plaintiffs' efforts to arrive at an agreed upon computation, the jury resolved those things. There were, therefore, monies due within the meaning of ORS 82.010(1)(a) at particular times, and interest was properly allowed.

Affirmed.