Argued and submitted May 16,
reversed and remanded August 11, 1980

LINEBAUGH, et ux,
*Respondents - Cross-Appellants,*
*v.*
HELVIG,
*Appellant - Cross-Respondent.*

(No. 39318, CA 14534)

615 P2d 366

■■■■■■

Joan M. Chambers, Corvallis, argued the cause and filed the briefs for appellant - cross-respondent.

James M. Gillis, Newport, argued the cause for respondents - cross-appellants. With him on the brief was Litchfield, MacPherson, Carstens & Gillis, Newport.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

## BUTTLER, J.

Plaintiffs seek damages they allege they suffered because of defendant's wrongful retention of certain business and financial records of plaintiffs. Those records were delivered to defendant in connection with her services to plaintiffs as a freelance tax preparer and bookkeeper. Plaintiffs' principal claim is that, because of defendant's failure to return the records upon their request, they lost an opportunity to sell their business, and were subsequently obliged to sell it for a price less than the one they had discussed with the first prospective purchaser. In addition to damages for that and other pecuniary losses, plaintiffs were awarded damages for mental distress by the trial court, sitting without a jury. Defendant appeals from the resulting judgment. Plaintiffs cross appeal, contending that they were entitled to greater damages and to attorney's fees. We reverse and remand.

Plaintiffs first hired defendant in 1975. In early March, 1977, plaintiffs entered into negotiations with Richard Bangle for the sale of their business and negotiated a purchase price of $152,500. However, the sale was contingent upon Bangle's having an opportunity to review plaintiffs' financial records, some of which were in defendant's possession. According to plaintiffs, they contacted defendant both by telephone and in person during the month of March, and orally requested that she return their records. As of March 28, defendant had not done so.[1] On that date, Bangle terminated the purchase negotiations because plaintiffs had failed to provide any of their records to him. In January, 1978, plaintiffs sold the business to a different purchaser for approximately $132,000.

In their various causes of action, plaintiffs alleged that defendant intentionally interfered with their opportunity to sell the business; that she breached a fiduciary duty to plaintiffs; that she engaged in

---

[1] Defendant did return some of the records at a later time, under circumstances which are not relevant to our disposition of this appeal.

an unlawful trade practice in violation of ORS 646.608, and that she was negligent. In his memorandum opinion, the trial judge stated that his judgment for plaintiffs was based upon his finding that defendant was negligent, and that he found she had not acted intentionally.

On appeal, defendant makes ten assignments of error, many of which we are unable to consider because defendant, who represented herself at trial, did not preserve them. However, she did object to the admission into evidence of two boxes (Exhibits 1 and 2, respectively), which purportedly contained the records which were in defendant's possession in March, 1977, and which she returned to plaintiffs at a later time. Defendant argues that the boxes should not have been received because "plaintiffs failed to lay a proper foundation for such exhibits."

The two boxes were explained by plaintiffs' attorney in a conference in chambers before the trial began:

> "We have two large boxes of records. If there is no objection from [defendant], what I would like to do is to mark each box and then have my witnesses identify what is contained in the box. I believe that in the interests of expediency this would be a faster way to admit the evidence, rather than admitting each document because there are probably several hundred documents. Essentially, what I would want to do in this is to show the Court exactly what records we are talking about. I don't think each item need be marked, but rather the records themselves in total can be admitted."

As noted, defendant did object.[2]

---

[2] Although defendant's objections were not textbook models of the art, they were sufficient to preserve the assignment of error relating to the admission of the exhibits. While the plaintiff Martha Linebaugh was testifying about the contents of the boxes and about which of the contents were in defendant's possession in March, 1977, defendant objected to one of the boxes as follows: ■■■■■■■

The plaintiff Martha Linebaugh testified on two separate occasions during the trial, and was asked questions by her attorney aimed at identifying the documents contained in the boxes and at showing that all of those documents were in defendant's possession in March, 1977. However, Mrs. Linebaugh's testimony was that some of the documents in the boxes were definitely *not* in defendant's possession at that time. The witness also manifested substantial confusion about whether other documents in the boxes were or were not in defendant's possession in March, 1977. Mrs. Linebaugh's testimony further indicated that the two boxes were not the containers in which defendant had returned plaintiffs' records to them, and that there had been considerable movement of documents into, out of and within various containers between the time defendant returned the records and the time the two boxes were offered as evidence.[3]

After the exhibits were received, the prospective buyer, Bangle, testified:

"Q. Prior to your testifying here today, have you had an opportunity to review the items that are in the box marked Exhibit 1?

"Your Honor, I object because I did not have [the records for] 1977 or 1975."

Defendant objected to the second box, stating:

"Your Honor, I object because those represent more than what was returned to them * * *."

Then, after the two exhibits were offered, defendant stated:

"Your Honor, there is a two-thirds of the box of Exhibit number 1 that were not in my possession, and approximately one-half of Exhibit number 2 that was not in my possession."

In addition, defendant asked questions in aid of objection, in response to which the witness indicated that certain contents of the boxes were not in defendant's possession in March, 1977, but it is not clear which records were, and were not, in defendant's possession.

[3] Mrs. Linebaugh had suffered an aneurism in April, 1976, which was after plaintiffs had engaged defendant and before the documents contained in the two exhibits were returned by defendant to plaintiffs and/or assembled from other sources. It should also be noted that, at the time of the events in quesiton, defendant was undergoing a variety of personal problems.

"A. Yes, I have.

"Q. Okay. Do you know what they are?

"A. The cash receipts for the years of West's Candy shop of Newport, Oregon.

"Q. Had you been shown those items back in 1977? Those items were never shown to you, were they?

"A. No, sir, nothing was shown to me.

"Q. You have reviewed them today. Would they have confirmed the representations made by Mr. and Mrs. Linebaugh as to the income of that business?

"A. Yes, they would have.

"Q. If you had reviewed those records back in March of 1977, would you have gone through with the purchase?

"A. Yes, sir, I believe I would." .

It is unclear from Bangle's testimony whether he would have purchased plaintiffs' business if he had had the opportunity to review *some* of the documents in Exhibit 1 or *all* of the documents contained in the exhibit. If the former was his intended meaning, he did not specify *which* documents he wished to review, and there was, accordingly, nothing to link his refusal to go through with the purchase to his inability to review the particular documents in Exhibit 1 which Mrs. Linebaugh testified were in defendant's possession in March, 1977. If the meaning of Bangle's testimony was that he considered it necessary to review all of the documents in the exhibit as a prerequisite to purchasing the business, then his inability to review the particular documents which were in defendant's possession may not have been a "substantial factor" in causing Bangle to decide against the purchase. *See Simpson v. Sisters of Charity of Providence,* 284 Or 547, 559-61, 588 P2d 4 (1978).[4]

---

[4] Defendant makes no express assignment of error to the effect that plaintiffs failed to prove that defendant's retention of documents caused the business sale transaction to fail. In any event, defendant made no motion for judgment at trial. *See Baldwin v. Miller,* 44 Or App 371, 374-76, 606 P2d 629, *rev den* (1980).

[684]

■ In any event, we need not decide which of the two possible meanings to ascribe to Bangle's testimony. Taken most favorably to plaintiffs, the testimony is ambiguous as to what documents in Exhibit 1 he considered it necessary to review. He had not been provided with *any* records. However, the testimony of Mrs. Linebaugh makes it clear that some of the documents in Exhibits 1 and 2 were not in defendant's possession in March, 1977, and leaves it unclear which of the documents were. The contents of the exhibits were not sufficiently identified, were in part irrelevant, and were a source of confusion affecting a fundamental issue in the case. Their admission requires that we reverse and remand.

Given the basis for our decision, we need not reach the contentions of plaintiffs on cross appeal. However, two of defendant's remaining assignments of error present questions which may arise on retrial, and we will therefore address them.

■ Defendant argues that she had no duty to return plaintiffs' records upon their *verbal* request. This argument is phrased in terms of whether plaintiffs *proved* defendant had a duty, but defendant seems also to be contending that no duty existed as a matter of law. Defendant bases her argument on a rule of the Oregon Board of Tax Service Examiners (OAR 800-10-025), which provides that a licensed tax preparer is required to return records to a client within a reasonable time after receiving the client's *written* request. Plaintiffs argue that the cited rule does not establish a standard of care under which tax preparers can be deemed negligent only for failing to comply with written requests to return records, but, rather, establishes a basis for disciplinary action against a licensed tax preparer who fails to comply with clients' written requests to return records. We agree with plaintiffs. We conclude that plaintiffs were entitled to the return of their records and that defendant had a duty to comply with a verbal, as well as a written, request for their return.

■ Finally, defendant argues that, because no intentional torts or physical injury were involved, plaintiffs are not entitled to damages for mental distress. Assuming that the trier of fact in any new trial which may take place makes the same factual findings as did the trial judge here, we agree that damages for mental distress would not be recoverable. *See Melton v. Allen,* 282 Or 731, 736-37, 580 P2d 1019 (1978).

Reversed and remanded.