Argued and submitted May 18, affirmed November 2, 1981

McKEAN,
*Respondent,*
*v.*
BERNARD et al,
*Appellants.*

(No. 76 3913, CA 18893)

635 P2d 673

Marvin S. Nepom and David R. Nepom, Portland, argued the cause and filed the briefs for appellants.

Ausey H. Robnett III, Eugene, argued the cause for respondent. With him on the brief was Thwing, Atherly & Butler, Eugene.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff brought this action to recover amounts he claimed were due under his employment contract with defendant Bernard. The trial court, sitting without a jury, awarded plaintiff $96,699.20, plus prejudgment interest and attorney's fees. Defendants appeal. We affirm.

Plaintiff was employed as the manager of Bernard's Eugene dental office from May, 1964, to November, 1973. Under the employment contract, plaintiff was guaranteed a minimum salary. Plaintiff was entitled to additional compensation (equal to 50 percent of the office's net profits "after deducting all operating expenses including office supplies, but excluding dental equipment and other capital expenses * * *") in employment years when the net profits of the office exceeded twice his guaranteed salary. The contract also provided that, upon its termination, Bernard was to pay plaintiff 15 percent of the "difference of the increase of good accounts receivable (those accounts 90 days or less) from May 1, 1964 to the date of termination * * *."

In 1968, defendant McKenzie Dental Laboratories, Inc. (McKenzie), the laboratory affiliated with Bernard's Eugene dental office, was separately incorporated. Although the written contract between plaintiff and Bernard relates by its terms only to plaintiff's management of the dental office, plaintiff alleged that he and Bernard orally agreed that he was also to manage McKenzie and that the net profits and the receivables of McKenzie were to be included in those of the dental office for purposes of determining his compensation and termination rights under the written contract. Prior to McKenzie's incorporation and, apparently, thereafter, plaintiff acted as manager of both the laboratory and the dental office.

At the time his employment terminated, plaintiff demanded an accounting from Bernard to determine the amounts due him under the contract. Documents prepared by Bernard's then accountants showed plaintiff owed Bernard slightly more than $5,000. In 1976, plaintiff brought the present action seeking, *inter alia,* that the court appoint a certified public accountant "to make an accounting

* * * of the amount owing to plaintiff and that the Court enter judgment for plaintiff in said amount * * *." The parties stipulated that Eugene accountant John Sooy be appointed for that purpose. After Sooy was appointed, he requested certain source documents from defendants. He was informed by defendants' attorney that "during a house cleaning session last summer these records were thrown out."[1] Sooy then petitioned the court to withdraw on the ground that he could not perform an accounting without the records. Subsequently, the trial court ordered defendants to make all extant documents and records relevant to damages available to plaintiff, and the court directed the parties to proceed to trial on the issue of damages.

■　　　Defendants' first contention on appeal is that the trial court erred in its award of contract damages to plaintiff and that this court should review *de novo* and find no damages are owing. The threshold question is whether our review is *de novo*.[2] Defendants argue that this is a proceeding in equity for an accounting, rather than an action at law on the contract. It is true that the remedy originally sought by plaintiff was an accounting. However, after defendants failed to produce the documents necessary for Sooy to perform an accounting, the trial court directed that a trial on damages be held, and the parties then proceeded to try the case in the manner contract actions are tried. Defendants do not contend that the trial court erred in setting the case for trial on damages without the accounting sought by plaintiff having been performed. More significantly, neither does plaintiff. At the conclusion of the trial, plaintiff amended the prayer of his complaint, without objection, to reflect the amount of damages supported by his evidence.

This case is distinguishable from *Flaherty v. Bookhultz et al,* 207 Or 462, 291 P2d 221, 297 P2d 856 (1956), on which defendants rely. There, the Supreme Court held that a proceeding to recover sales commissions

---

[1] The records were thrown out after this action was filed.

[2] While it is not completely clear, plaintiff does not appear to disagree with defendants about the scope of review.

under an employment contract was reviewable as an equitable accounting, rather than as a contract action. However, the court did not hold in *Flaherty* that *all* similar proceedings are necessarily equitable, and it suggested that the defendants might have demurred but did not, on the ground that the plaintiff had a plain, speedy and adequate remedy at law. The court in *Flaherty* simply held that the subject matter of the case "was not clearly beyond the pale of equitable cognizance" and that, as the parties proceeded, "[t]he case was tried as a suit in equity and was so appealed to this court." 207 Or at 472.

There is something tautological and disingenuous about defendants' arguments concerning the scope of appellate review and plaintiff's proof. Defendants posit that they are entitled to a new fact-finding process on appeal, because this is a suit for an equitable accounting. However, defendants made no accounting; instead, they essentially forced plaintiff to his proof by their claimed inability to produce documentation which should have been uniquely within their control. Defendants now argue that plaintiff's proof was inadequate and that we have the ability to review *de novo* (and reverse the trial judge's acceptance of the proof) because the equitable nature of the proceeding was permanently established by plaintiff's frustrated effort to obtain an accounting. Phrased somewhat differently, defendants claim that, because plaintiff originally sought an equitable remedy which their inability to produce evidence denied him, defendants are nevertheless now entitled to *de novo* review of the evidence of damages plaintiff was able to present. We conclude that the case was tried as a contract action and that our evidentiary review is for substantial evidence.

■    The approach plaintiff followed to prove damages was to introduce the dental office's profit and loss statements for the period of plaintiff's employment. Those statements had been prepared by defendants' accountants. Plaintiff also introduced certain other documents which were furnished by defendants. Plaintiff then put on the testimony, with supporting exhibits, of an accountant who had analyzed the profit and loss statements and had made adjustments to them, mainly by "disallowing" deductions

from plaintiff's share of net income for certain claimed operating expenses which were shown on the statements but which the accountant found inappropriate or unexplained.

Defendants' principal arguments are that plaintiff's accountant used the wrong approach in deciding whether to disallow operating expenses and was incorrect in disallowing certain specific expenses. Defendants contend that the statements prepared by their accountants are entitled to "great deference * * *, particularly since [the accountants] prepared their statements from source documents," and that:

"* * * The only basis for plaintiff's claim is that unexplained expenses and differences in accounts should be disallowed entirely, thereby having the net income of the Eugene dental office and McKenzie Dental Laboratories, Inc. increased by the disallowed amounts, thereby creating a larger bonus for Dr. McKean. There is no basis, however, for that conclusion: merely because the source documents and subsidiary records are unavailable, and certain amounts cannot be verified with the certainty desired by plaintiff's accountant, there is no reason to disallow the entire amounts."

According to defendants, plaintiff's accountant simply disallowed any operating expenses shown by the statements which he questioned and could not verify. Defendants' position appears to be that, absent a more thorough investigation of the disallowed items by plaintiff's accountant,[3] his evidence is either insufficient to support damages or is not entitled to weight and that the statements prepared by defendants' accountants must accordingly be accepted. We disagree. It is of course true that the factfinder was not obligated to agree with plaintiff's accountant about the disallowance of particular expenses. However, defendants' dissatisfaction with the accountant's methodology does not in itself rebut his conclusions or render them *insufficient* evidence to support the award of damages. Defendants had, and presumably took the opportunity at trial, as they do here, to argue that the accountant's methodology rendered his evidence unpersuasive.

---

[3] Defendants do not suggest how plaintiff's accountant was to conduct such in depth inquiries in the absence of the source data.

Defendants also had the opportunity at trial to put on evidence of their own to show that specific operating expenses which were disallowed by plaintiff's accountant should not have been. However, defendants failed to take advantage of that opportunity — apparently because the source documents needed to conclusively prove or disprove what expenses were incurred were as unavailable to defendants as to plaintiff by the time of trial.

Our review indicates that only one of the specific claimed operating expenses which plaintiff's accountant rejected was the subject of *a specific* explanation by defendants. The interest on certain loans which had been charged by defendants' accountants to the Eugene office was disallowed as an operating expense by plaintiff's accountant. Bernard testified that he borrowed $28,000 on behalf of the Eugene office for construction and remodeling purposes. Defendants' witnesses also attempted to show that certain *kinds* of operating expenses which plaintiff's accountant disallowed in fact had been incurred and were allowable. However, plaintiff's accountant's figures and conclusions were not specifically rebutted in any case except the $28,000 loan. We agree with plaintiff that interest attributable to that loan was not a deductible operating expense under the contract, because the loan proceeds were used for capital improvements.

In sum, defendants do not succeed in showing that the testimony of plaintiff's accountant was insufficient to support the damages awarded (whatever validity defendants' arguments may have regarding the weight of the testimony), and defendants did not controvert the specific damages to which he testified. We reject defendants' contention that the trial court erred in the award of contract damages.

■■ Defendants next argue that a stipulation they made, to the effect that plaintiff's allegation that he was entitled to a share of the McKenzie profits and receivables was "to be deemed admitted," pertained only to the contemplated accounting by Sooy and was not binding on defendants at trial. It is true, as defendants and the authorities they cite indicate, that stipulations made by a party for one purpose are not necessarily binding for a different purpose.

*See, e.g., Johnson v. Northwest Acceptance,* 259 Or 1, 485 P2d 12 (1971). Here, however, we discern, and defendants suggest, no plausible explanation why the two purposes differ: both the planned accounting by Sooy, which defendants stipulated could include the McKenzie amounts, and the trial on damages had the objective of determining what, if anything, defendants owed plaintiff. We reject defendants' argument that their admission was not binding.[4]

■     Defendants' final argument is that the trial court erred by awarding prejudgment interest. The first of the three points defendants make in support of that argument is that the complaint did not contain allegations upon which to base the award. This point was not raised at trial or in defendants' motion to the trial court to reconsider the award of prejudgment interest. With the exception noted below, sufficient evidence was introduced to support the interest award, and defendants were clearly alerted by plaintiff's evidence that a claim for prejudgment interest was being made. The pleading defect, if any, could have been cured by a simple amendment. We decline to consider defendants' attack on the pleadings.

Defendants' second and third points are related. The second is:

"Prejudgment interest is appropriate only when a demand is such that the exact pecuniary amount is either *ascertained* or *ascertainable* by simple computation, and when the time for which interest must run can be ascertained. * * *

"In this case there never has been an exact pecuniary amount which has either been ascertained or ascertainable by simple computation. The question of whether any liability exists and the amount of such liability is the essence of this case; the testimony of accountants is necessary to decide the issue, and plaintiff's accountant and defendants'

---

[4] The point may be academic in any event. Plaintiff's evidence was sufficient to show that he managed the laboratory as well as the dental office and that, after the 1968 incorporation, he continued "to operate as a practical matter just the way [he] had before" in connection with the laboratory. The factfinder could infer that, prior to 1968, the employment contract pertained to the office and the laboratory as an integrated operation and that there was no change in the arrangements for the management of the laboratory or plaintiff's compensation for managing it after the laboratory's incorporation.

accountants disagreed on the subject. As such, the judgment amount in this case cannot be considered to be an amount that is ascertained or ascertainable by simple computation." (Emphasis defendants'.)

Defendants' third point is:

"Even if the amount of liability was deemed to be either ascertained or ascertainable by simple computation, the time for which it must run has not been ascertained in this case. Plaintiff's accountant, whose calculations the judgment is based on, admitted on cross examination that he did not calculate the bonus attributable to McKenzie Dental Laboratories on a year-to-year basis. Instead, he merely totalled McKenzie Dental Laboratories, Inc.'s net income over the years, and multiplied by 50%. This constituted some $45,354.57 of the total amount the plaintiff's accountant calculated was due Dr. McKean. Plaintiff's accountant also admitted that he did not associate the overpayment to McKenzie Dental Lab which he calculated as creating liability to Dr. McKean of $106.64 to an employment year. There is no evidence when these amounts claimed to be due became due."

■ Defendants' second point is not well taken. This case is analogous to *Isler v. Shuck,* 38 Or App 233, 589 P2d 1180 (1979), in which the defendant's former employer sought damages under a provision of their employment contract that the employer was entitled to 50 percent of gross fees earned by the defendant from clients of the employer within three years after the defendant terminated his employment, and was entitled to 10 percent of gross fees earned from the defendant's own clients within two years after termination. We rejected the defendant's contention that prejudgment interest was not awardable and stated:

"The parties agree that the controlling rule is found in *Public Market Co. v. Portland,* 171 Or 522, 625, 130 P2d [624, 138 P2d] 916 (1943), which held that pre-judgment interest can be allowed only:

" '* * * [w]here "the demand is of such a nature that its exact pecuniary amount was either *ascertained, or ascertainable* by simple computation, or by reference to generally recognized standards such as market price,' and where the 'time for which interest, if allowed, must run,—that is, a time of definite default or tortfeasance,—can be ascertained." ' (Quoting 1 Sedg. on Damages (9th Ed), 571 § 300; italics in original.)

"Defendant would have this rule defeat plaintiffs' claim to interest because they first alleged a claim for $33,101, amended that to $27,592 during the trial and finally, in rebuttal, claimed $20,086, which was one dollar more than the jury's verdict. He says: 'To determine damages involved, many objective and subjective criteria in the difficult task determining who was plaintiffs' client, who was defendant's, when this occurred, and how much was involved.' The answer to that is that there could be no difficulty applying the formula once it was determined into which category (*i.e.,* 50 percent, 10 percent or zero percent) an account properly would fall. The categorization did present questions of fact, but that does not lead to the conclusion that because there were categorical disputes, there could not be a determination that defendant owed sums certain at dates certain. Even though the defendant had been totally uncooperative under the arbitration clause and doggedly resisted plaintiffs' efforts to arrive at an agreed upon computation, the jury resolved those things. There were, therefore, monies due within the meaning of ORS 82.010(1)(a) at particular times, and interest was properly allowed." 38 Or App at 239-40.

As in *Isler,* the particular sums due this plaintiff on particular dates, at least for his services to the dental office, are easily ascertainable under the contract formula, once certain underlying facts are proven and found. We reject defendants' second point.

■     The third point presents a closer question. The fiscal years of the dental office and of McKenzie are not the same. Plaintiff's accountant did not attempt to attribute the net income of McKenzie to particular employment years, as he did in computing plaintiff's share of the net income of the dental office. Similarly, although for more obscure reasons, the accountant did not attribute to any year the $106.64 increase in plaintiff's share of net profits which resulted from the disallowance as an operating expense of an overpayment by the dental office for laboratory services.

Accordingly, plaintiff did not prove the dates from which interest should run on the $106.64 disallowed expense or on plaintiff's share of the McKenzie net income. However, it does not follow from the fact they were not

proven that the dates were not definite and *could not* have been proven. The question therefore becomes whether defendants preserved for appeal the question of the insufficiency of plaintiff's proof. As far as we find or they claim, defendants made no motion at trial on grounds of insufficiency of evidence. *See Falk v. Amsberry,* 290 Or 839, 843, 626 P2d 362 (1981); *Baldwin v. Miller,* 44 Or App 371, 376, 606 P2d 629, *rev den* 289 Or 45 (1980). Their assignment of error on the prejudgment interest issue is that the trial court erred in denying their post-trial motion for reconsideration of the award. That motion was made on the ground

"* * * that the award is not appropriate where, as shown by the evidence adduced during the trial of this case, the parties did not have any distinct understanding or agreement as to the indebtedness on one side or claim on the other."

Assuming *arguendo* that this sufficiency of evidence question *could* be raised by a post-trial motion, defendants' motion did not raise the question. We therefore do not rule on it.

Affirmed.